Public Employee Labor Relations Board
No. 94-256

## APPEAL OF CITY OF PORTSMOUTH, BOARD OF FIRE COMMISSIONERS

(New Hampshire Public Employee Labor Relations Board)

November 15, 1995

*Thomas E. Cayten,* of Portsmouth, by brief and orally, for the petitioner.

*Cook & Molan, P.A.,* of Concord (*Shawn J. Sullivan* on the brief and orally), for the respondent.

*H. Bernard Waugh, Jr.,* of Concord, by brief for New Hampshire Municipal Association, as *amicus curiae.*

HORTON, J. The petitioner, the Board of Fire Commissioners of the City of Portsmouth (the fire commission), appeals the ruling of the New Hampshire Public Employee Labor Relations Board (PELRB) that a fire commissioner's comments reported in a local newspaper were an unfair labor practice in violation of RSA 273-A:5, I(a) and (b) (1987). The fire commission argues that the comments were an exercise of free speech protected by the State and Federal Constitutions and that the PELRB erred in interpreting RSA 273-A:5. We reverse on statutory grounds.

On May 15, 1991, at a public meeting of the fire commission, a member of the respondent, Portsmouth Firefighters, Local 1313 (the

union), provided to the press an alcoholic rehabilitation agreement between the Portsmouth Fire Department and a union member. The union's executive board authorized the release of the agreement to the press in retaliation for the member's criticism of the union for failing to help him after he was suspended for losing his driver's license.

Later that evening, a newspaper reporter contacted Sheila Loch, one of the fire commissioners, at her home and asked her to comment on the release of the agreement. When she asked the reporter for his source of the copy of the agreement, she was told that someone in a firefighter's uniform had supplied it. The reporter implied that it had come from a union member. Loch responded that what the union had done was reprehensible. In addition, she made negative comments about the union and its leadership. The following day, Loch's comments appeared in *Foster's Daily Democrat* in an article entitled, "Commissioners slam union for releasing part of personnel file." This article, which is the basis of the union's unfair labor practice complaint, contained the following:

> Commissioner Sheila Loch said she was furious about what happened. "Everyone has the right to expect their privacy respected . . . . As a human being it concerns me that a person would belong to the kind of group that would do something like that."

> "To me it's low. It's below classless."

> . . . .

> Ms. Loch said she believes the union has been led astray by its leadership. "I am not sure they have done themselves a favor in who they have representing them. I question whether they have chosen the best they could."

> She said she believes there are a number of individuals in the union who are able to compromise and view matters with common sense. "I don't think these people are in the leadership," adding she believes the union leadership hurt members during recent contract negotiations.

The union filed unfair labor practice charges with the PELRB. The PELRB's ruling that the fire commission had committed unfair labor practices was reversed on appeal due to an evidentiary error, and the case was remanded to the PELRB. *See Appeal of City of Portsmouth, Bd. of Fire Comm'rs*, 137 N.H. 552, 630 A.2d 769 (1993).

On remand, the PELRB again ruled that the fire commission had committed unfair labor practices in violation of RSA 273-A:5, I(a)

and (b). The PELRB found that Loch's comments violated the statute when she specifically attacked the union leadership and suggested that leadership hurt members during recent contract negotiations. The board found "no evidence that [Loch's] criticism was justified," and it expressed concern about the implications of the comments for future negotiations. Finally, the board found that Loch's comments, "whether intended or not," had "a disruptive effect," "created doubt in the effectiveness and truthfulness of the union leadership," and created "confusion and interference with the administration" of the union. The fire commission's motion for rehearing was denied. This appeal followed.

The findings of the PELRB "are deemed *prima facie* lawful and reasonable." *Appeal of Town of Pelham*, 124 N.H. 131, 135, 469 A.2d 1295, 1297 (1983). Absent error of law, this court will not overturn a ruling of the PELRB unless we find that it abused its discretion. *Appeal of AFL-CIO Local 298*, 121 N.H. 944, 947, 437 A.2d 260, 262 (1981). This reflects the standard of review set forth in RSA 541:13 to which we strictly adhere. *Appeal of State of N.H.*, 138 N.H. 716, 720, 647 A.2d 1302, 1305 (1994).

The fire commission first argues that the comments regarding the union and union leadership which were published in the press are protected by the New Hampshire and United States Constitutions as the exercise of free speech. Because we resolve this case on statutory grounds, we need not reach the constitutional issues. *See Appeal of Astro Spectacular*, 138 N.H. 298, 299, 639 A.2d 249, 250 (1994).

RSA 273-A:5 prohibits unfair labor practices. It reads, in pertinent part:

> I. It shall be a prohibited practice for any public employer:
>
> (a) To restrain, coerce or otherwise interfere with its employees in the exercise of the rights conferred by this chapter;
>
> (b) To dominate or to interfere in the formation or administration of any employee organization; . . . .

RSA 273-A:5, I(a), (b) (1987). The fire commission argues that the PELRB erred when it interpreted RSA chapter 273-A as prohibiting Loch's comments to the press, and it urges us to adopt the standard of protection contained in the National Labor Relations Act (NLRA).

██ ██ The NLRA provides, in pertinent part:

> The expressing of any views, argument, or opinion . . . shall not constitute or be evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit.

Labor Management Relations (Taft-Hartley) Act § 8(c), 29 U.S.C. § 158(c) (1988). The fire commission argues that by limiting prohibited speech to expressions containing threats or promise of benefits, the NLRA establishes the minimum acceptable protection of free speech for public employers. The fire commission then argues that even if the federal standard is not adopted, the comments at issue did not amount to interference with the administration of a union. The union counters that because the "free speech plank" contained in the NLRA does not exist in RSA chapter 273-A, we should limit our inquiry to deciding whether the comments were coercive. The union then argues that the comments were coercive, even if viewed in light of the federal statute. We find that the speech was not coercive, and that it did not amount to interference with the administration of the union. We decline, however, to impute the requirements of section 8(c) of the NLRA to RSA chapter 273-A.

■ The issue before us is what speech constitutes "interference" within the meaning of RSA chapter 273-A. Although we resolve this case on nonconstitutional grounds, we recognize that the first amendment is a significant factor in our construction of the statute. In a case presenting questions of statutory interpretation similar to those before us, the Michigan Court of Appeals found the purposes of the statute embodying the organizational rights of public employees best served by permitting the free flow of information from both union and employer. *Local 79, Serv. Emp. v. Lapeer Cty. Gen. Hosp.*, 314 N.W.2d 648, 651 (Mich. Ct. App. 1981). In addition, that court assumed, without deciding, the existence of a constitutional right to engage in union activities, but reasoned that there was "no infringement thereof merely by virtue of a public employer's expression of its views on union representation, absent intimidation, coercion, or misrepresentation." *Id.* at 652. The court concluded, "Manifestly, fair comment on the question of union representation does not abridge an employee's freedom of association." *Id.* We find the Michigan court's decision helpful in establishing the contours of "interference" under RSA 273-A:5, I(a) and (b).

We also find that the federal counterpart to RSA chapter 273-A provides a useful backdrop for our decision in this case. The federal statute requires that in order for the views, argument, or opinion of a public employer to constitute an unfair labor practice, those views, argument, or opinion must contain "threat of reprisal or force or

promise of benefit." 29 U.S.C. § 158(c). Although we decline to adopt specifically the requirements of the federal statute, we have relied on the language of that statute for guidance in the past. *See Appeal of AFL-CIO Local 298*, 121 N.H. at 946, 437 A.2d at 261. In that case, we also recognized our need to "be cognizant of the constitutional provisions that raise the freedom to communicate one's views to the highest level of protection that can be provided." *Id.*; *see* U.S. CONST. amend. I; N.H. CONST. pt. I, art. 22.

In this case, the PELRB found that Loch's comments were "unjustified," and, "whether intended or not, . . . did have a disruptive effect on the union and its administration." In support of this finding, the PELRB relied upon testimony by a union official that, after the comments were published, "a number of firefighters came up between union meetings and during the union meeting wanting to know what had the Executive Board done to hurt negotiations, did we have anything offered that we didn't bring to the body and basically they couldn't understand what was going on." The PELRB concluded that interference had occurred, stating that Loch's comments "created doubt in the effectiveness and truthfulness of the union leadership as it represented negotiations positions to the membership."

In finding that Loch's comments constituted interference under the statute, the PELRB erred. Proof of "disruptive effect," "whether intended or not" and whether "justified" or not, does not amount to, or rise to the level of, interference. We do not think it unusual or even unhealthy for union members to ask questions relating to the competence of, and honest representation by, their elected representatives. Moreover, Loch's comments did not contain elements of "intimidation, coercion, or misrepresentation." Consequently, we cannot say that the union demonstrated interference on the part of Loch within the meaning of RSA 273-A:5, I(a) and (b).

*Reversed.*

BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all concurred.