Public Employee Labor Relations Board
No. 95-164

APPEAL OF THE HOUSE LEGISLATIVE FACILITIES
SUBCOMMITTEE & a.

(New Hampshire Public Employee Labor Relations Board)

November 21, 1996

*Loretta S. Platt* and *Paul Alfano*, of Concord (*Ms. Platt* and *Mr. Alfano* on the brief, and *Ms. Platt* orally), for the petitioners, House Legislative Facilities Subcommittee and Lee Marden, Chief of Staff of the New Hampshire House of Representatives, and intervenor the New Hampshire Senate.

*Betsey A. Engel*, of Detroit, Michigan, by brief and orally, for intervenor International Union, UAW.

*Robert Cushing, pro se*, filed no brief.

*Jeffrey R. Howard*, attorney general (*Daniel J. Mullen*, senior assistant attorney general, and *Christopher P. Reid*, special counsel, on the brief), as *amicus curiae*.

BROCK, C.J. This appeal arises from a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) that the New Hampshire General Court is a public employer for purposes of New Hampshire's Public Employee Labor Relations Act (Act), RSA ch. 273-A (1987 & Supp. 1995). We reverse.

In October 1993, Robert Cushing, an employee of the New Hampshire House of Representatives (house), petitioned the PELRB for a determination that permanent, full-time employees of the house are "public employees" as defined by RSA 273-A:1, IX (1987), and thereby entitled to the full rights and protections of RSA chapter 273-A. The International Union, UAW (UAW) intervened in the case. In May 1994, a majority of the PELRB found that the house was a "political subdivision" of the State, and thereby a public employer by definition under the statute. The PELRB also found that permanent, full-time legislative employees were not specifically excluded from the definition of "public employees" under the statute, and therefore could lawfully organize for purposes of collective bargaining.

The House Legislative Facilities Subcommittee and Lee Marden, Chief of Staff of the Speaker of the New Hampshire House of Representatives, moved for rehearing. In addition, the New Hampshire Senate petitioned to intervene and moved for rehearing. All of these motions were granted. After rehearing, the PELRB revoked its initial finding that the legislature is a "political subdivision" and ruled instead that the legislature is "the state itself as one of the three co-equal branches of government." Accordingly, the PELRB concluded that the legislature qualifies as a "public employer" for purposes of the statute, and "unless exempted, legislative employees are [state] employees." This appeal followed.

■ Although the petitioners raise several issues on appeal, the dispositive question before us is whether the New Hampshire General Court is a "public employer" for purposes of the Act. We hold that it is not.

■ Our standard of review is provided by RSA 541:13 (1974), which allows us to review agency decisions for errors of law. *See Appeal of State of N.H.*, 138 N.H. 716, 719, 647 A.2d 1302, 1305 (1994). "[T]his court is the final arbiter of the intent of the legislature as expressed in the words of the statute," *Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 70, 635 A.2d 465, 466 (1993), and "we will set aside erroneous rulings of law." *Appeal of Campton School Dist.*, 138 N.H. 267, 269, 639 A.2d 241, 242 (1994).

■ The Act was enacted in 1975 to "foster harmonious and cooperative relations between public employers and their employees

. . . ." Laws 1975, 490:1. To achieve this goal, the Act granted public employees the right to organize and engage in collective bargaining with their employers, mandated that public employers negotiate in good faith with employee organizations, and established the PELRB to assist in resolving disputes between government and its employees. *Id.*

The Act defines "public employee" as "any person employed by a public employer," with several exceptions. RSA 273-A:1, IX. "Public employer" is defined as "the state and any political subdivision thereof, any quasi-public corporation, council, commission, agency or authority, and the state university system." RSA 273-A:1, X (1987).

■ The Act does not define what constitutes the "state" for purposes of its definition of "public employer," nor did the legislature explicitly exempt itself from the definition. "Where statutory language is not specifically defined, we look to the intent of the legislation, which is determined by examining the construction of the statute as a whole . . . ." *Rix v. Kinderworks Corp.*, 136 N.H. 548, 550, 618 A.2d 833, 834 (1992) (quotation omitted). We conclude that the legislature did not intend to include itself as a public employer for purposes of the Act; we construe "state," as used in RSA chapter 273-A, as signifying the executive branch only.

■ The Act contains specific procedures for bargaining with State employees. RSA 273-A:9 (1987 & Supp. 1995). The statute grants the executive branch effective control over the bargaining process. *Id.* The Governor, as chief executive, is charged with representing the State in the negotiation of cost items and terms and conditions of employment affecting State employees. RSA 273-A:9, I (1987). To assist with the negotiations, the Governor is directed to appoint an advisory committee, RSA 273-A:9, III (1987), and may also designate an official state negotiator, who serves at the Governor's pleasure. RSA 273-A:9, II (1987). In effect, the Governor has sole authority to direct the negotiation process.

■ By contrast, the legislature's role in the bargaining process is markedly limited. The Act establishes a permanent joint legislative committee on employment relations, comprised of various members of the house and senate leadership, which meets with the State negotiating committee "to discuss the state's objectives in the bargaining process." RSA 273-A:9, V(a), (c) (Supp. 1995). The joint legislative committee is also required to hold hearings on all collective bargaining agreements with State employees and related fact-finders' reports, and to "submit any recommendation" arising

therefrom to the house and the senate. RSA 273-A:9, V(d) (Supp. 1995). By their nature, these functions are advisory, and not part of the negotiations.

■■ In addition, the legislature has the authority to approve or reject the cost items of any agreement entered into by the State with its employees. RSA 273-A:3, II(b) (1987). Cost items are defined as "any benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer . . . ." RSA 273-A:1, IV (1987). Thus the Act does not grant the legislature any authority that it did not already have; the legislature is the branch of government which appropriates public funds.

■ Finally, the legislature may play a role when State negotiators and State employees fail to reach a bargaining agreement and instead submit to mediation. RSA 273-A:12, I, III (1987). In such cases, the legislature, as the legislative body of the public employer, may ultimately vote on whether to accept or reject the recommendations of a mediator. RSA 273-A:12, I-III (1987).

■ Construed as a whole, the Act vests the executive branch with substantive control over the collective bargaining process with State employees. As such, we read the Act as appropriately applying only to employees of the executive branch of the State. The limited role assigned to the legislature weighs against the Act's applicability to the legislative branch. Without an explicit expression of intent, we will not assume that the legislature intended to surrender to the Governor the authority both to negotiate the terms and conditions of employment for its employees, and to exclusively represent it in negotiations with its employees. "We will not interpret the statute to produce such an illogical result." *Appeal of Soucy,* 139 N.H. 110, 116, 649 A.2d 60, 63 (1994) (quotation omitted). We therefore construe the terms "public employer" and "public employee" to refer to the executive, and not the legislative, branch of State government.

We have reviewed public employee labor relations statutes from other jurisdictions, several of which apply, either expressly or as interpreted by a state court, to employees of the executive and at least one other branch of state government. *See, e.g.,* Conn. Gen. Stat. Ann. § 5-270(a) (West Supp. 1996), (b) (West 1988); Mass. Gen. Laws Ann. ch. 150E, § 1 (West 1996); *Com. Ex Rel. Bradley v. Pennsylvania Labor,* 388 A.2d 736, 739 (Pa. 1978) (interpreting 43 Pa. Cons. Stat. Ann. § 1101.301(1) (1991)). In contrast to RSA chapter 273-A, these other statutes do not vest control over

collective bargaining with all covered state employees in the executive branch; rather, they provide for negotiations to be conducted between the "public employer" and public employees or their representative. 43 Pa. Cons. Stat. Ann. § 1101.701 (1991); *see also* Mass. Gen. Laws Ann. ch. 150E, § 1 (specifying that public employer of judicial employees is chief administrative justice of trial court); Conn. Gen. Stat. Ann. § 5-278(a)(2) (West 1988) (specifying that employer representative for judicial branch is chief court administrator). Maine's statute, however, which like our own vests control over collective bargaining in the governor or his designated representative, expressly limits coverage to employees of the executive branch of state government. Me. Rev. Stat. Ann. tit. 26, § 979-A(5) (West Supp. 1995).

RSA chapter 17-E (1988 & Supp. 1995) provides further evidence that the legislature did not intend to include itself in the collective bargaining statute. Enacted the same year as the Act, RSA chapter 17-E established a joint committee on legislative facilities and two subcommittees for legislative management, one each for the house and senate. RSA 17-E:1, :5 (1988). The subcommittees are responsible for approving salaries for legislative attaches and other employees of the house and senate respectively, unless otherwise provided by statute. RSA 17-E:5. "Where reasonably possible, statutes should be construed as consistent with each other." *Appeal of Derry Educ. Assoc.*, 138 N.H. at 71, 635 A.2d at 466. Although, as the UAW argues, the joint committee on legislative facilities, established under RSA chapter 17-E, and the joint legislative committee on employment relations, established under RSA chapter 273-A, share several common members, nothing in either statute indicates that the legislature intended the two committees to be one and the same. Therefore, we conclude that RSA chapters 17-E and 273-A established two separate schemes for management of legislative and executive employees respectively. *Cf.* RSA 490:26-b (Supp. 1995) (providing supreme court shall establish personnel classification and compensation system, to be approved by legislature, and salary and grievance procedures for nonjudicial court personnel); RSA 490:28 (Supp. 1995) (providing full-time nonjudicial employees of judicial branch receive fringe benefits and salary increases as provided for classified State employees).

We are unpersuaded by the UAW's argument regarding failed proposed amendments to a house bill earlier this year that would have expressly excluded legislative and judicial employees from coverage as "public employees," and the legislative and judicial branches from the definition of "public employer," under RSA

chapter 273-A. *See* N.H.S. JOUR. 844 (1995). The UAW argues that the failure of this amendment conclusively reveals a legislative intent to maintain the inclusion of legislative and judicial employees within the statutory scheme. This argument is misguided; the amendment's failure could as easily have resulted from the belief that those employees were not covered by the Act in the first place, or from a decision to await the resolution of this pending appeal.

Finally, we turn to the petitioners' argument that a determination that the legislature is a public employer would violate the doctrine of separation of powers. *See* N.H. CONST. pt. I, art. 37. Although this argument raises an important issue, we resolve the case on statutory grounds and need not reach the constitutional issue. *See Appeal of City of Portsmouth, Bd. of Fire Comm'rs*, 140 N.H. 435, 437, 667 A.2d 345, 347 (1995).

Because we hold that the New Hampshire General Court is not a public employer for purposes of RSA chapter 273-A, we need not address the other issues raised on appeal.

*Reversed.*

All concurred.