Public Employee Labor Relations Board
No. 99-554

## APPEAL OF INTER-LAKES SCHOOL BOARD

(New Hampshire Public Employee Labor Relations Board)

September 28, 2001

*Soule, Leslie, Kidder, Sayward & Loughman,* of Salem (*Michael S. Elwell* on the brief and orally), for the petitioner, Inter-Lakes School Board.

*James F. Allmendinger* and *Steven R. Sacks,* of Concord, staff attorneys, NEA-New Hampshire (*Mr. Allmendinger* and *Mr. Sacks* on the brief, and *Mr. Allmendinger* orally), for the respondents, Inter-Lakes Education Association and Inter-Lakes Support Staff, NEA-NH.

BROCK, C.J. This appeal arises from a New Hampshire Public Employee Labor Relations Board (PELRB) decision that the Inter-Lakes School Board (school board) committed an unfair labor practice when it submitted two fact finders' recommendations to the legislative body, the Inter-Lakes School District (school district) meeting, through multiple warrant articles. The PELRB found that a fact finder's findings and recommendations must be submitted to the legislative body as one package, and must be approved or rejected by the legislative body as one package. We affirm.

RSA 273-A:12 (1987) establishes a procedure for the resolution of disputes between a public employer and the bargaining representative of the public employees. When the parties are unable to reach an agreement on a contract, they must follow the procedures set out in the statute which include, among other things, mediation and fact finding. *Id.* If mediation fails, a neutral party is chosen, who reports "findings of fact together with recommendations" for resolving the issues remaining in dispute. *Id.*

The dispute in this case arose out of the school board's separate negotiations with two groups: the Inter-Lakes Education Association, NEA-New Hampshire (teachers' association), and the Inter-Lakes Support Staff, NEA-NH (support staff association). The school district's collective bargaining agreement (CBA) with the teachers expired in 1998 without a successor agreement. Lengthy negotiations with the teachers' association involved both mediation and fact finding. In November 1998, a neutral fact finder issued a forty-four page report including findings and recommendations concerning four different issues. The teachers' association accepted, but the school board rejected, the fact finder's recommendations.

Negotiations with the support staff association were also lengthy. After negotiating for several months, the parties reached an impasse and went to mediation and then fact finding. A fact finder issued a fifty-three page report which contained findings and recommendations concerning eight

different issues. Both the support staff association and the school board rejected the fact finder's recommendations.

The school board placed all of the recommendations from both fact finders on the warrant for the school district's 1999 annual meeting. In doing so, however, it split the two fact finders' recommendations into five separate warrant articles. The first three articles pertained to the teachers' association, and the last two to the support staff association, as follows:

> Article I asked voters to approve or reject the fact finder's recommendations concerning teacher performance evaluations;

> Article II asked voters to approve or reject the fact finder's recommendations concerning teacher compensation cost items;

> Article III asked voters to approve or reject the fact finder's recommendations concerning teacher transfers within the school district and duration;

> Article IV asked voters to approve or reject the fact finder's recommendations concerning support staff non-cost items (definition of full-time employees, individual contracts, savings clause, holidays, and duration);

> Article V asked voters to approve or reject the fact finders' recommendations concerning support staff cost items (wages and merit-based compensation, leaves and insurance benefits).

Each warrant article contained a statement indicating that the school board did not recommend approval of the recommendations, and some contained explanations about why the school board recommended rejection. Furthermore, the language of each warrant article relating to non-cost items asserted that the vote on the article was "advisory only." The teachers' association and the support staff association filed unfair labor practice charges against the school board. *See* RSA 273-A:5, I(a), (e), (g), (i) (1999). Both associations' charges stemmed from allegations that the board had refused to submit a fact finder's report to the legislative body in proper form.

The annual school district meeting was held while the unfair labor practice charges were pending before the PELRB. Motions were made and passed at the meeting to consider articles 1, 2 and 3 together, and articles 4 and 5 together. Because the separate warrant articles were

combined at the annual meeting, the issue pending before the PELRB was arguably moot. Nevertheless, the PELRB consolidated the cases, held a hearing, and concluded that the school board's posting of a warrant that submitted each fact finder's recommendations to the legislative body through multiple warrant articles was an unfair labor practice. We proceed with a review of the issue, in the public interest. *See Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 70 (1993).

The school board argues on appeal that the PELRB erred as a matter of law when it held that the submission of each fact finder's recommendations to the legislative body through multiple warrant articles was an unfair labor practice. In support of this position, the school board argues that RSA 197:1-g, :5 and :7 (1999) grant the governing body of a school district broad discretion to determine the number, format and content of the warrant articles that it places on the school district's warrant, and that RSA chapter 273-A does not circumscribe this authority. We disagree.

■ RSA 197:1-g, :5, and :7 confer upon the school board responsibility for posting warrants. They do not, however, afford the school districts and towns unfettered discretion to determine the number and contents of articles that they place on the warrant when another statute places restrictions on the format of the warrant articles. The fact that the legislature did not prescribe the precise language for the warrant article in RSA 273-A:12, as it has in other statutes, does not alter this conclusion.

RSA 273-A:12, III(a) provides that if the employee organization or the board of the public employer rejects a neutral fact finder's recommendations, "the findings and recommendations shall be submitted to the legislative body of the public employer." RSA 273-A:12, III(a). The legislative body then votes to "accept or reject so much of the recommendations as otherwise is permitted by law." *Id.* We must determine whether this language circumscribes the school board's discretion to determine the number and contents of articles that it places on the warrant.

We strictly adhere to the standard of review set forth in RSA 541:13 (1997). *See Appeal of State of N.H.*, 138 N.H. 716, 720 (1994). We act as the final arbiter of the meaning of the statute, and will set aside erroneous rulings of law. *See* RSA 541:13; *Appeal of Campton School Dist.*, 138 N.H. 267, 269 (1994).

When presented with a question of statutory construction, we begin our analysis with an examination of the statutory language, *see Appeal of Routhier*, 143 N.H. 404, 405 (1999), and, "where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of N.H. Dept. of*

*Transportation,* 144 N.H. 555, 556 (1999) (quotation and citation omitted). "All of the sections of a statute must be construed together, and not viewed separately in isolation." *Id.* (brackets and quotations omitted). Furthermore, "[w]e will not place a literal interpretation on a phrase when doing so removes it from the context of the whole." *State v. Johnson,* 134 N.H. 570, 576 (1991). "Where the statutory language is ambiguous or where more than one reasonable interpretation exists, we review legislative history to aid in our analysis." *K&J Assoc. v. City of Lebanon,* 142 N.H. 331, 333 (1997).

The applicable provisions of RSA 273-A:12 state, in pertinent part:

> I. Whenever the parties . . . have bargained to impasse . . . a neutral party . . . shall undertake to mediate the issues remaining in dispute. If . . . mediation does not result in agreement . . . a neutral party chosen by the parties, or failing agreement, appointed by the board, shall make and report findings of fact together with recommendations for resolving each of the issues remaining in dispute, which findings and recommendations shall not be made public until the negotiating teams shall have considered them for 10 days.

> II. If either negotiating team rejects the neutral party's recommendations, his findings and recommendations shall be submitted to the full membership of the employee organization and to the board of the public employer, which shall vote to accept or reject so much of his recommendations as is otherwise permitted by law.

> III. *If either the full membership of the employee organization or the board of the public employer rejects the neutral party's recommendations, his findings and recommendations shall be submitted to the legislative body of the public employer, which shall vote to accept or reject so much of his recommendations as otherwise is permitted by law.*

> IV. If the impasse is not resolved following the action of the legislative body, negotiations shall be reopened. Mediation may be requested by either party and may involve the board of the public employer if the mediator so chooses.

RSA 273-A:12 (1987) (amended 1998) (emphasis added).

The school board argues that the statute is unambiguous because the plain language calls for the legislative body to vote, not upon a "report," but upon "recommendations." The school board also argues that because the statute does not require the legislative body to either "accept all" or "reject all" of the recommendations, the statute should not be read to require a single vote through a single warrant article upon all of a fact finder's recommendations. If we were to look at the language, "his findings and recommendations shall be submitted to the legislative body of the public employer which shall vote to accept so much of his recommendations as otherwise is permitted by law," in isolation, without considering the other provisions of the statute, we might accept the board's interpretation. Viewing the phrase in the context of the statute as a whole, and considering "the policy sought to be advanced by the entire statutory scheme," *Appeal of Mascoma Valley Reg. School Dist.*, 141 N.H. 98, 100 (1996), however, we conclude that the PELRB's interpretation of the statute is also reasonable.

As previously noted, RSA 273-A:12 details the procedure to be followed when parties have bargained to an impasse. It is only after mediation has failed that a neutral party is asked to report findings of fact with recommendations for resolving each of the issues remaining in dispute. *See* RSA 273-A:12, I. After the fact finder makes findings and recommendations, they are submitted to the negotiating teams, which vote to accept or reject the recommendations. *See* RSA 273-A:12, I, II. "If either negotiating team rejects the neutral party's recommendations," the findings and recommendations are submitted to the full membership of the employee organization and to the board of the public employer. RSA 273-A:12, II. Then, "if either the full membership of the employee organization or the board of the public employer rejects the neutral party's recommendations," the findings and recommendations are submitted to the legislative body. RSA 273-A:12, III. The language of sections II and III suggests that the legislature intended that the negotiating teams, and, subsequently, the association membership and the board of the public employer, consider the fact finder's recommendations as a total package. No language suggests that any of these entities may reject or accept some of the recommendations.

Furthermore, the fact finder's role would be undermined if the negotiating teams, the association membership or the board of the public employer were permitted to pick through the fact finder's findings and recommendations, accepting only those recommendations they deemed favorable and rejecting those they found disagreeable. Allowing the parties to do so would, in essence, return them to "square one" in their

negotiations. Moreover, if the parties were allowed to accept certain recommendations and reject others, it would be unclear when the parties would be deemed to have "rejected the recommendations," thereby triggering the next level of the impasse resolution procedure set out in the statute. Because the recommendations are considered as a whole package at the first two levels of the impasse procedure, it makes sense that they should be considered and voted upon as a package at the third level as well.

This conclusion is also reasonable given that the fact finder's role is to consider the positions of both parties and to suggest compromises to resolve the impasse. Each fact finder's report at issue in this case indicates that the report is to be considered as a complete package. Although this court has not been provided with a copy of the fact finders' reports, the PELRB found that the reports contain disclaimers stating that strong recommendations on some issues had been balanced by weaker recommendations or rejections of other issues. The school board does not challenge this finding.

Another provision of RSA chapter 273-A supports the PELRB's conclusion that the "findings and recommendations" must be submitted to the legislative body through a single warrant article. RSA 273-A:3 indicates that when the parties do reach agreement on the terms of a CBA, the cost items contained in the agreement must be submitted to the legislative body for approval. Should the voters reject any part of the submission or otherwise take any action that modifies the terms of the cost items before them, either party may reopen negotiations. *See* RSA 273-A:3, II (b). By allowing either party to reopen negotiations under these circumstances, the legislature indicated its understanding that the rejection of part of a package including both financial and non-financial benefits could upset the delicately crafted compromise that the package represents. In other words, the legislature recognized that each provision contained in a CBA agreed to by the parties may be dependent upon the existence of some or all of the other provisions in the agreement.

Similarly, each provision in a fact finder's report may be, as the PELRB recognized in this case, dependent upon the existence of the other provisions. Therefore, allowing the legislative body to "express its opinions on particular issues" by voting on the individual recommendations will do little to help resolve the impasse because the vote on a particular issue does not indicate its importance relative to the other issues in the fact finder's report. Indeed, allowing the legislative body to vote up or down on the individual issues would do nothing but interject the voters into the collective bargaining process in a manner the legislature did not intend. *See Appeal of Alton School Dist.*, 140 N.H. 303, 310-11 (1995) (allowing

legislative body to determine in the first instance some terms of the teachers' employment would frustrate the entire collective bargaining process); *Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 71-72 (1993) ("[s]chool boards, not legislative bodies, have authority to negotiate and enter into collective bargaining agreements").

The school board argues that RSA 273-A:12, IV does not empower a legislative body to resolve a bargaining impasse by its action. Rather, the legislative body's role is to express its positions upon the fact finder's recommendations, thereby increasing public scrutiny of the negotiations and applying pressure to the parties to reach agreement. *See Appeal of Derry*, 138 N.H. at 72. Therefore, according to the school board, the PELRB incorrectly concluded that voting upon a fact finder's recommendations through multiple warrant articles would constitute bargaining on the floor of the meeting. Furthermore, given the non-binding nature of the vote, a legislative body's voting upon the fact finder's recommendations will not undermine an agreement by the parties, and will merely allow the legislative body to express its positions on the issues and assist the parties in achieving their own agreement following the legislative body's actions.

Even assuming, without deciding, that the school board is correct that the legislative body's vote on the recommendations is non-binding, we do not believe that this necessarily supports the school board's interpretation of the statute. While allowing votes on multiple warrant articles might arguably assist the parties toward reaching agreement by allowing the legislative body to express its positions on the issues, allowing votes on multiple warrant articles would also arguably undermine one of the purposes of the vote on the recommendations: to apply pressure to the parties to reach agreement. This can be more easily seen by considering the fact finder's recommendations regarding the teachers' association. The teachers' association had accepted, but the school board had rejected, the recommendations. If the legislative body had voted to accept the recommendations as a whole, and if, as the school board asserts, the vote was non-binding, then the school board would have been under greater pressure to accept the recommendations once the parties returned to negotiations. This would have increased the chances of resolving the impasse, and would therefore have served one of the purposes of the statute. Allowing the legislative body to vote on individual recommendations made in the report increases the chances that the fact finder's recommendations would be rejected, at least in part, and would therefore decrease the chances that the legislative body would put pressure on the school board to accept the fact finder's report and resolve the impasse. Thus, even if we assume that the legislative body's vote is

non-binding, equally plausible policy arguments can be made to support both the school board's and the associations' interpretation of the statute. Because more than one reasonable interpretation of the statutory language exists, we must now turn to the legislative history of the statute to determine legislative intent. *See K&J Assoc.*, 142 N.H. at 333.

The associations argue that the legislative history supports the PELRB's conclusion that the "findings and recommendations" must be submitted to the legislative body through a single warrant article. They assert that Senator Brown, Chairman of the Senate Select Committee on Collective Bargaining and a conferee on the committee which developed the version of the bill that became RSA chapter 273-A, made clear that the legislature understood that a fact finder's recommendations were, at every stage in the impasse resolution procedure, to be accepted or rejected as a package. Discussing one draft of RSA 273-A:12, he stated, "[I]f the negotiators do not accept the fact finders [sic] recommendations, these recommendations are placed before the employees and before the board of the public employer for acceptance or rejection. . . . If the employees and the board of the employer do not accept the fact finders [sic] recommendations, the recommendations are then submitted to the employees again and to the legislative body of the public employer." N.H.S. JOUR. 1070 (1975). Later, Senator Brown used the word "report" in lieu of the term "recommendations" when describing the impasse resolution procedure, stating that "[w]ithin this bill the procedure to take is first, mediation, then fact finding, then submission of the fact finding *report* to the employer or the governing body, and then *it* goes back to the town meeting." N.H.S. JOUR. 1108 (1975) (emphasis added).

The only legislative history the school board cites in support of its interpretation of the statute is a discussion on the floor of the Senate which suggests that the impasse resolution process was intended to be open-ended. *See* N.H.S. JOUR. 1108 (1975). According to the school board, the legislative history supports its argument that the legislative body's voting on the fact finder's recommendation is non-binding, and will merely assist the parties in achieving their own agreement following the legislative body's action. Therefore, it is unnecessary for the legislative body to be required to vote upon the fact finder's recommendations through a single warrant article. We have already concluded, however, that the arguably non-binding nature of the legislative body's vote on the recommendations could support either the school board's or the legislative body's interpretation of the statute, and the school board does not point to any other legislative history to support its argument. Therefore, we are persuaded by the associations' argument that the legislative history supports its interpretation of the statute.

Finally, we reject the school board's argument that association members can "remedy" any problems created by the posting of multiple warrant articles by either submitting a petition article or moving to amend the warrant at the meeting. We see no reason to hold that the school board is entitled to act in a manner inconsistent with a statutory mandate, simply because the association may be able to "remedy" any problems created by the school board's actions.

For these reasons, we conclude that a fact finder's findings and recommendations must be submitted to the legislative body as a complete package, and the legislative body must approve or reject the recommendations as one package.

*Affirmed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.