NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Public Employee Labor Relations Board
Nos.   2021-0027
       2021-0028


APPEAL OF NEW HAMPSHIRE TROOPERS ASSOCIATION & a.
(New Hampshire Public Employee Labor Relations Board)

Argued: November 18, 2021
Opinion Issued: May 12, 2022


Gary Snyder, of Concord, by brief, for the petitioner.


John M. Formella, attorney general (Zachary L. Higham, assistant attorney general, on the brief and orally), for the respondent.


Milner & Krupski, PLLC, of Concord (John S. Krupski on the brief and orally), for the intervenors.


DONOVAN, J.  The petitioner — State Employees' Association of New Hampshire, Inc. SEIU, Local 1984 (SEA) — and the intervenors — New Hampshire Troopers Association, New Hampshire Troopers Association-Command Staff, New Hampshire Probation and Parole Officers Association, and New Hampshire Probation and Parole-Command Staff Association — appeal an

order of the Public Employee Labor Relations Board (PELRB) denying the petitioner's request for declaratory relief. They argue that the PELRB erred by ruling that the state legislature's vote accepting a fact-finder's report and recommendations pursuant to RSA 273-A:12, III (2010) was not binding upon the respondent, the State of New Hampshire. We conclude that the legislature's vote was advisory and did not bind the State. Accordingly, we affirm.

## I. Facts

The following facts were found by the PELRB or are otherwise undisputed. The petitioner and the intervenors (collectively, the unions) represent several state employee bargaining units. In 2018, the unions and the State began negotiating the terms of a multi-year collective bargaining agreement. After the negotiations reached an impasse, the parties proceeded to impasse resolution procedures and engaged a neutral fact finder to assist them with resolving their disputes. See RSA 273-A:12 (Supp. 2021). In November 2019, the fact finder issued a report setting forth recommendations for resolving the impasse. The report and recommendations included at least some cost items. See RSA 273-A:1, IV (2010) (defining "cost item").

The unions accepted the fact-finder's report, but the Governor did not. In addition, the Governor declined to submit the report to the Executive Council for its consideration.[1] See RSA 273-A:12, II. The parties treated the Governor's actions as a rejection of the report pursuant to RSA 273-A:12, II and the parties proceeded to the next step of impasse resolution: submission of the report to the state legislature. See RSA 273-A:12, III(a).

The legislature voted to adopt the fact-finder's report. The unions took the position that the legislature's vote was binding upon the State with respect to the cost items set forth in the report. The State took the opposite position, asserting that the legislature's vote was merely advisory and did not result in a binding agreement between the parties. In August 2020, SEA filed a petition for declaratory relief, seeking a declaration from the PELRB that the legislature's vote bound the State to the cost items set forth in the fact-finder's report. The intervenors joined in support of SEA's position.

In November 2020, the PELRB issued an order denying SEA's request for declaratory relief and concluding that the legislature's vote did not bind the State. The PELRB explained, in part, that "[t]here are no provisions in [RSA chapter 273-A] which confer upon a legislative body any authority to establish,

---

[1] The legality of the Governor's refusal to submit the report to the Executive Council for its consideration is the subject of another appeal pending before this court. Accordingly, because the issue has not been briefed as part of this case, we need not address it here. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("[W]e confine our review to only those issues that [have been] fully briefed.").

2

unilaterally or otherwise, the terms and conditions of employment for bargaining unit employees through negotiations or by a vote on a fact finder's report." The PELRB further reasoned, in part, that "[t]he role of the state legislature . . . is limited . . . to the approval of cost items" and that "[t]here is no authority in [RSA chapter 273-A] for the proposition that the state legislature, instead of the Governor, has the power to negotiate the terms and conditions of employment . . . at any point in the process, up to and including impasse fact finding." The unions filed motions for rehearing, which the PELRB denied. These consolidated appeals followed.

## II. Standard of Review

RSA chapter 541 governs our review of PELRB decisions. Appeal of SEA (NH Community College System), 170 N.H. 699, 701 (2018); see RSA 273-A:14 (2010). We will not set aside the PELRB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. Appeal of SEA, 170 N.H. at 701; see RSA 541:13 (2021). The PELRB's findings of fact are presumed to be prima facie lawful and reasonable. Appeal of SEA, 170 N.H. at 701; see RSA 541:13. When reviewing the PELRB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record. Appeal of SEA, 170 N.H. at 702. We review the PELRB's rulings on issues of law de novo. Id.

Resolving the unions' arguments requires that we interpret several provisions of RSA chapter 273-A. Statutory interpretation presents a question of law, which, as explained above, we review de novo. See Appeal of New England Police Benevolent Ass'n, 171 N.H. 490, 493 (2018). When examining the statutory language, we ascribe the plain and ordinary meaning to the words used in the statute. Id. We do not consider words and phrases in isolation, but, rather, within the context of the statute as a whole. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. If the language of the statute is clear and unambiguous, we will not look beyond the language of the statute to determine its meaning. Id. at 493-94.

## III. Analysis

The unions argue that the PELRB erred by ruling that the legislature's vote pursuant to RSA 273-A:12, III was advisory and did not bind the State to the cost items set forth in the fact-finder's report. We begin by summarizing the relevant provisions of the statutory scheme. RSA chapter 273-A governs collective bargaining negotiations between public employers and employees.

Dillman v. Town of Hooksett, 153 N.H. 344, 347 (2006). For purposes of RSA chapter 273-A, the State is a public employer, see RSA 273-A:1, X (Supp. 2021), and its employees, with certain exceptions, are public employees, see RSA 273-A:1, IX (2010). RSA 273-A:9 (Supp. 2021) sets forth specific provisions regulating the bargaining process between the State and its employees. RSA 273-A:9, I, provides, in relevant part, that "[a]ll cost items and terms and conditions of employment affecting state employees in the classified system generally shall be negotiated by the state, represented by the governor as chief executive." To assist with the negotiations, the Governor "shall . . . appoint an advisory committee," RSA 273-A:9, III, and "may designate an official state negotiator who shall serve at the pleasure of the governor," RSA 273-A:9, II. We have interpreted RSA 273-A:9 as "grant[ing] the executive branch effective control over the bargaining process." Appeal of House Legislative Facilities Subcom., 141 N.H. 443, 446 (1996).

By contrast, we have described the legislature's role in the bargaining process as "markedly limited" and restricted to three discrete functions. Id. First, RSA 273-A:9, VI establishes "a joint legislative committee known as the joint committee on employee relations." The joint committee is required to "meet with the state negotiating committee . . . to discuss the state's objectives in the bargaining process." RSA 273-A:9, VI(c). The joint committee must also "hold hearings on all collective bargaining agreements with state employees and on all fact-finders' reports relative to the collective bargaining process with state employees" and "submit any recommendation on such agreements or reports" to the senate and the house of representatives. RSA 273-A:9, VI(d). We have described these functions as "advisory" and "not part of the negotiations." Appeal of House Legislative Facilities Subcom., 141 N.H. at 447.

Second, RSA 273-A:3, II(b) (Supp. 2021) authorizes the legislature "to approve or reject the cost items of any agreement entered into by the State with its employees." Appeal of House Legislative Facilities Subcom., 141 N.H. at 447; see RSA 273-A:3, II(b) ("Only cost items shall be submitted to the legislative body of the public employer for approval at the next annual meeting of the legislative body . . . ."); Appeal of State Employees' Assoc. of N.H., 158 N.H. 258, 263 (2009) ("The New Hampshire legislature is the legislative body that approves the cost items in [collective bargaining agreements] affecting state employees."). A "cost item" is "any benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer with which negotiations are being conducted." RSA 273-A:1, IV. Pursuant to RSA 273-A:3, II(b), if the legislature "rejects the submission, or while accepting the submission takes any action which would result in a modification of the terms of the cost item submitted to it, either party may reopen negotiations on the entire agreement." RSA 273-A:3, II(b). However, the legislature is not authorized to modify cost items that are "agreed to by the [State] and the employee organization." Id.

Third, RSA 273-A:12 — the statute at issue in this case — sets forth the legislature's role in the procedures for resolving disputes when the parties' negotiations reach an impasse. RSA 273-A:12, I(b) provides, in relevant part: "If the parties so choose, or if mediation does not result in agreement . . . a neutral party chosen by the parties, or failing agreement, appointed by the [PELRB], shall make and report findings of fact together with recommendations for resolving each of the issues remaining in dispute . . . ." RSA 273-A:12 further provides, in relevant part:

> II. If either negotiating team rejects the neutral party's recommendations, his findings and recommendations shall be submitted to the full membership of the employee organization and to the board of the public employer, which shall vote to accept or reject so much of his recommendations as is otherwise permitted by law.

> III. (a) If either the full membership of the employee organization or the board of the public employer rejects the neutral party's recommendations, the findings and recommendations shall be submitted to the legislative body of the public employer . . . which shall vote to accept or reject so much of the recommendations as otherwise is permitted by law.

> . . . .

> IV. If the impasse is not resolved following the action of the legislative body, negotiations shall be reopened.

RSA 273-A:12, II-IV (emphasis added).

Turning to the issues presented in these appeals, the unions argue that the PELRB erred by concluding that the legislature's vote pursuant to RSA 273-A:12, III(a) did not bind the Governor to the cost items set forth in the fact-finder's report. This argument requires a review of the plain language of RSA 273-A:12, III(a). We previously interpreted this language in Appeal of Derry Education Association, 138 N.H. 69, 71-73 (1993), where we held that RSA 273-A:12, III(a) required a school board to submit a fact-finder's report "to [its] legislative body for review, but that the legislative body may not bind the parties by a vote on non-cost items." In reaching that decision, we construed the phrase "as otherwise is permitted by law" in RSA 273-A:12, III(a) as "limit[ing] the legislative body's authority consistent with the remainder of RSA chapter 273-A." Id. at 71. We reasoned, in part, that "[s]chool boards, not legislative bodies, have authority to negotiate and enter into collective bargaining agreements" and that "[t]hroughout RSA chapter 273-A the legislature described the responsibilities of legislative bodies only with respect to cost items." Id. at 71-72. Therefore, based, in part, upon the plain language

5

of the statutory scheme, we concluded that the legislative body's vote was non-binding with respect to the non-cost items set forth in the fact-finder's report. Id. at 71-73.

The unions cite our decision in Appeal of Derry for the proposition that a legislative body's vote pursuant to RSA 273-A:12, III(a) is binding with respect to cost items and non-binding with respect to non-cost items. To support their argument, the unions interpret the phrase "as otherwise is permitted by law" in RSA 273-A:12, III(a) as referencing the legislature's authority to approve and reject cost items pursuant to RSA 273-A:3, II(b). Therefore, according to the unions, because "the legislature is permitted by law to approve cost items, and because it is authorized and in fact required to vote on a fact finder's report under the current circumstances, a favorable vote on a fact finder's report must create binding terms on the parties pertaining to cost items."

The unions' reliance upon Appeal of Derry is misplaced because the fact-finder's report in that case addressed only non-cost items. Thus, we did not have occasion to consider whether a legislative body's vote is binding with respect to cost items. See Appeal of Derry, 138 N.H. at 70-73. The issue presented in this appeal is one of first impression in New Hampshire. See Appeal of Inter-Lakes Sch. Bd., 147 N.H. 28, 30, 35 (2001) (declining to address school board's argument that legislative body's vote on fact-finder's report, which contained cost items, was non-binding). Nonetheless, our interpretation of RSA 273-A:12, III(a) in Appeal of Derry is instructive.

As explained above, in Appeal of Derry, we interpreted the phrase "as otherwise is permitted by law" as "limit[ing] the legislative body's authority consistent with the remainder of RSA chapter 273-A." Appeal of Derry, 138 N.H. at 71. In other words, a legislative body's vote pursuant to RSA 273-A:12, III(a) cannot contravene other provisions of RSA chapter 273-A. See id. A legislative body's vote cannot, for example, undermine a public employer's authority to negotiate the terms of a collective bargaining agreement. See id. (observing that legislative bodies do not have "authority to negotiate and enter into collective bargaining agreements"); Appeal of House Legislative Facilities Subcom., 141 N.H. at 446 (interpreting RSA 273-A:9, I, as granting the Governor "sole authority to direct the negotiation process"). Therefore, because binding a public employer to a legislative body's vote on a fact-finder's report would undermine the employer's negotiating authority, we conclude that a legislative body's vote pursuant to RSA 273-A:12, III(a) is not binding upon the employer, regardless of whether the report contains cost items.

To the extent that we based our decision in Appeal of Derry upon the authority of legislative bodies to ratify cost items pursuant to RSA 273-A:3, II(b), we did not intend to suggest that such authority extends to the dispute resolution process set forth in RSA 273-A:12. See Appeal of Derry, 138 N.H. at 71-72. Indeed, nothing in the language of RSA 273-A:3, II(b) suggests

6

that legislative bodies have authority to participate in collective bargaining negotiations or resolve disputes between the parties. See RSA 273-A:3, II(b). To the contrary, our holding in Appeal of City of Franklin, 137 N.H. 723 (1993), suggests that the authority of legislative bodies to ratify cost items pursuant to RSA 273-A:3, II(b) applies only after the parties have resolved their disputes and reached an agreement. See Appeal of City of Franklin, 137 N.H. at 729-30 (concluding that city council's appropriation of funds for annual school budget did not constitute approval of cost items in collective bargaining agreement pursuant to RSA 273-A:3, II(b) because agreement did not exist until after city council appropriated the funds). By contrast, RSA 273-A:12, III(a) applies during impasse proceedings — before the parties have reached an agreement. We therefore will not interpret RSA chapter 273-A in a manner that conflates the authority of a legislative body to vote on a fact-finder's report, see RSA 273-A:12, III(a), with its authority to ratify cost items in collective bargaining agreements, see RSA 273-A:3, II(b).

Our construction of RSA 273-A:12, III(a) is bolstered by other language in RSA 273-A:12. Specifically, RSA 273-A:12, IV provides, in relevant part: "If the impasse is not resolved following the action of the legislative body, negotiations shall be reopened." RSA 273-A:12, IV (emphases added). We previously interpreted this language in Appeal of Derry, reasoning that RSA 273-A:12, IV supported our conclusion that the legislative body's vote was non-binding. Appeal of Derry, 138 N.H. at 72. We explained that, if the legislature intended "that the vote of the legislative body be binding on all issues, it could have so stated." Id. We reasoned that the legislature could have "provided for impasses to be resolved by rather than following action of the legislative body." Id. Comparing the language of paragraph IV to that of the preceding two paragraphs, see RSA 273-A:12, II-III, we further reasoned: "Had the legislature intended that the legislative body's vote bind the parties, it could have used the same language in paragraph IV, thus requiring that the negotiations be reopened only if the legislative body also rejected the fact-finder's report." Appeal of Derry, 138 N.H. at 72. Contrary to the unions' argument, our construction of this language in Appeal of Derry did not leave open the possibility that a legislative body's vote "is binding on some, but not all issues." Although, as explained above, our decision in Appeal of Derry did not address whether a legislative body's vote is binding with respect to cost items, our interpretation of the language in RSA 273-A:12, IV is equally applicable here.

The unions raise several arguments in support of a contrary interpretation of the statute. They first argue that RSA 273-A:9, which sets forth specific provisions for collective bargaining with state employees, contemplates a greater role for the state legislature in the bargaining process, as compared to other types of legislative bodies. This argument is unavailing. As explained above, the legislature's role in the negotiation process is "markedly limited" and the functions of the joint committee are "advisory" and "not part of the negotiations." Appeal of House Legislative Facilities Subcom.,

7

141 N.H. at 446-47; see RSA 273-A:9, VI.  Nothing in the statute's language suggests that the state legislature has reserved to itself the authority to participate in collective bargaining negotiations or to resolve disputes between the parties.  See RSA 273-A:9, VI.  Although RSA 273-A:9, IV affords the legislature certain advisory authority, in the context of impasse resolution, RSA 273-A:12, III envisions the same role for all legislative bodies.  To hold otherwise would add language to the statute that the legislature did not see fit to include, Appeal of New England Police Benevolent Ass'n, 171 N.H. at 493, and would undermine its grant to the Governor the "sole authority to direct the negotiation process," Appeal of House Legislative Facilities Subcom., 141 N.H. at 446; see RSA 273-A:9, I.

Pointing to the word "generally" in RSA 273-A:9, I, SEA next argues that the Governor's authority to negotiate with state employees is non-exclusive.  Based upon the plain meaning of the statute's language, we disagree.  RSA 273-A:9, I, provides, in relevant part, that "[a]ll cost items and terms and conditions of employment affecting state employees in the classified system generally shall be negotiated by the state, represented by the governor as chief executive."  RSA 273-A:9, I (emphasis added).  We conclude that the word "generally" does not modify the word "negotiated," but, rather, the phrase "cost items and terms and conditions of employment affecting state employees in the classified system."  Id.  Thus, contrary to SEA's argument, the word "generally" reinforces — rather than limits — the Governor's authority to negotiate on the State's behalf.  See id.  This conclusion is consistent with the other language of RSA 273-A:9, I, which expressly charges the Governor with representing the State during collective bargaining negotiations.  Id.  Because the language of RSA 273-A:9 is clear and unambiguous, we need not look beyond the words of the statute to discern its meaning.  See Appeal of New England Police Benevolent Ass'n, 171 N.H. at 493-94.

SEA argues that it would produce absurd results to hold that the legislature's vote pursuant to RSA 273-A:12, III(a) does not bind the Governor with respect to cost items.  Specifically, SEA asserts that, under our construction of the statute, "the Governor may single handedly prevent negotiations and subsequent impasse proceedings from resulting in a contract, despite what the board of the public employer, the legislature, and the union are able to agree to."  We disagree that our interpretation of RSA 273-A:12, III(a) would produce absurd results.

RSA 273-A:3, I, obligates public employers "to negotiate in good faith." RSA 273-A:3, I (2010).  This obligation "involves meeting at reasonable times and places in an effort to reach agreement on the terms of employment, and to cooperate in mediation and fact-finding required by this chapter."  Id.  Thus, although the Governor has "sole authority to direct the negotiation process," Appeal of House Legislative Facilities Subcom., 141 N.H. at 446, the Governor may not act in bad faith to prevent negotiations and impasse proceedings from

8

resulting in a contract, see RSA 273-A:3, I. Provided that the Governor acts in good faith, he or she is free to continue negotiating the terms of a collective bargaining agreement. See RSA 273-A:3, I ("[T]he obligation to negotiate in good faith shall not compel either party to agree to a proposal or to make a concession.").

We further conclude that the unions' interpretation of RSA 273-A:12, III(a) would itself produce absurd results. Our decision in Appeal of Inter-Lakes School Board, 147 N.H. 28 (2001), supports this conclusion. In Appeal of Inter-Lakes, we held that, pursuant to RSA 273-A:12, III(a), "a fact finder's findings and recommendations must be submitted to the legislative body as a complete package, and the legislative body must approve or reject the recommendations as one package." Id. at 37. In reaching that conclusion, we recognized that "the rejection of part of a package including both financial and non-financial benefits could upset the delicately crafted compromise that the package represents." Id. at 34. We reasoned, in part, that "each provision in a fact finder's report may be . . . dependent upon the existence of the other provisions," and, therefore, "allowing the legislative body to express its opinions on particular issues by voting on the individual recommendations will do little to help resolve the impasse because the vote on a particular issue does not indicate its importance relative to the other issues in the fact finder's report." Id. (quotation omitted). We further explained, in part, that "allowing the legislative body to vote up or down on the individual issues would do nothing but interject the voters into the collective bargaining process." Id.

When considered in light of our holding in Appeal of Derry, 138 N.H. at 72-73, that a legislative body's vote on a fact-finder's report is non-binding with respect to non-cost items, our decision in Appeal of Inter-Lakes demonstrates the irrationality of the unions' argument. Allowing legislative bodies to bind public employers with respect to cost items — but not non-cost items — would do little to encourage impasse resolution. To the contrary, it would, "in essence, return [the parties] to 'square one' in their negotiations." Appeal of Inter-Lakes, 147 N.H. at 33-34. We will not assume that the legislature intended such an absurd result. See Hogan v. Pat's Peak Skiing, LLC, 168 N.H. 71, 75 (2015) ("[I]t is not to be presumed that the legislature would pass an act leading to an absurd result . . . ." (quotation omitted)).

Finally, the intervenors argue that interpreting RSA 273-A:12, III(a) as providing for a non-binding vote on a fact-finder's report would "offend the notion of separation of powers" established in the State Constitution. We disagree. The State Constitution "specifically charges the legislative branch with appropriating and the executive branch with spending state revenue." New Hampshire Health Care Assoc. v. Governor, 161 N.H. 378, 387 (2011); see N.H. CONST. pt. II, arts. 2, 5, 18, 56. Consistent with the constitutional principle of the separation of powers, "the executive branch may expend public funds only to the extent, and for such purposes, as they may have been

appropriated by the legislature." New Hampshire Health Care Assoc., 161 N.H. at 387. As explained above, RSA 273-A:3, II(b) authorizes the state legislature "to approve or reject the cost items of any agreement entered into by the State with its employees." Appeal of House Legislative Facilities Subcom., 141 N.H. at 447; see RSA 273-A:3, II(b). Because the legislature retains the ultimate authority to approve or reject cost items in collective bargaining agreements, our holding in this case is consonant with the legislature's constitutional authority to appropriate public funds. See Monadnock Reg'l Sch. Dist. v. Monadnock Dist. Educ. Ass'n, 173 N.H. 411, 423 (2020) ("The parties to a [collective bargaining agreement] are not bound by its cost items unless the legislative body ratifies them.").

## IV. Conclusion

Accordingly, we conclude that the PELRB did not err by ruling that the legislature's vote accepting the fact-finder's report was not binding upon the State. We therefore affirm the PELRB's order denying SEA's request for declaratory relief.

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.