Public Employee Labor Relations Board
No. 92-051

APPEAL OF CAMPTON SCHOOL DISTRICT
(New Hampshire Public Employee Labor Relations Board)

March 15, 1994

*Kidder & Lawson,* of Laconia (*Bradley F. Kidder* on the brief and orally), for the petitioner, Campton School District.

*James F. Allmendinger,* of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent, Association of Campton Educators, NEA - New Hampshire.

BROCK, C.J.    The Campton School District appeals from an order of the New Hampshire Public Employee Labor Relations Board (PELRB), requiring the school district to reinstate one of its teachers. We reverse and remand.

On March 30, 1990, Patricia Hoyt, a third-year probationary teacher in the Campton School District, was notified in writing that she would not be renominated to a teaching contract for the 1990–91 school year. The collective bargaining agreement between the school district and the Campton teachers' association provides that "[a] teacher shall not be . . . non-renewed . . . without just cause." Ms. Hoyt subsequently filed a grievance alleging that the school board did not have just cause to nonrenew her contract.

The collective bargaining agreement contains a multi-step procedure for resolving grievances. The steps include, in sequence, review by the grievant's immediate supervisor, principal, superintendent, and school board. If the grievant is dissatisfied with the decision of the school board, the teachers' association may initiate advisory arbitration. The contract provides that "[t]he decision of the arbitrator will be advisory only and shall not be final and binding on the Board." Ms. Hoyt's grievance proceeded to advisory arbitration. The arbitrator concluded that Ms. Hoyt was nonrenewed without just cause and recommended that she be reinstated to her position. The school board reviewed the arbitrator's ruling but voted to uphold the nonrenewal.

On September 26, 1990, the teachers' association filed an unfair labor practice charge with the PELRB on behalf of Ms. Hoyt, alleging, in part, a breach of the collective bargaining agreement. *See* RSA 273-A:5, I(h) (1987). The board held a hearing and concluded that Ms. Hoyt was nonrenewed without just cause. In addition, the board ruled, *sua sponte,* that the grievance procedure contained in

the collective bargaining agreement was "not workable as required under RSA 273-A." The school district appealed.

We acknowledge the PELRB's authority to initially define the broad statutory language of RSA chapter 273-A, *Appeal of Manchester Bd. of School Comm.*, 129 N.H. 151, 152, 523 A.2d 114, 115 (1987), and we defer to the board's findings upon questions of fact properly before it, *Appeal of Town of Pelham*, 124 N.H. 131, 134–35, 469 A.2d 1295, 1297 (1983). As the final arbiter of the meaning of the statute, however, we will set aside erroneous rulings of law. *See* RSA 541:13; *Appeal of Berlin Board of Education*, 120 N.H. 226, 229, 413 A.2d 312, 314 (1980).

The school district argues that the PELRB erred in ruling that the grievance procedure contained in the collective bargaining agreement was not workable. RSA 273-A:4 (1987) requires that "[e]very agreement negotiated under the terms of this chapter shall be reduced to writing and shall contain workable grievance procedures." The PELRB stated in its decision:

> "Lacking a final resolution under the grievance procedure, we find that the procedure is not workable as required under RSA 273-A as the School Board who is involved in the process is also the body who has the ultimate power to veto any arbitrator's decision. A workable grievance procedure must include a mechanism for resolution of disputes."

In interpreting a statute, we will "ascribe[] to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise." *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980). The common meaning of "workable" is "capable of being put into successful operation: practicable, feasible." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2634 (unabridged ed. 1961). "Procedure" is defined as "a particular way of doing or of going about the accomplishment of something . . . a particular course of action." *Id.* at 1807.

The parties have negotiated a grievance procedure which sets out in detail the formal process to be followed in resolving disputes, including time limits at each step, mandatory hearings at the superintendent and school board levels, and advisory arbitration. At any step of the procedure, a decision may become final. We assume the PELRB found the procedure not workable because it does not contain a final and binding step by a body other than the school board. To require, however, in order to be workable, that the pro-

cedure contain a final and binding resolution or that the final determination rest with a decision-maker other than the school board, attributes meaning to the statute beyond the definition of the terms used. This was an error of law.

The school district also argues that the PELRB denied the school board "the benefit of its bargain, to retain the final decision in a grievance." In *Appeal of Hooksett School District*, 126 N.H. 202, 204, 489 A.2d 146, 148 (1985), this court stated:

> "Absent a provision for binding arbitration following the grievance procedure, and with no explicit or implicit language in the contract stating that [the last step] of the grievance procedure is final and binding on the parties, the PELRB, in the context of an unfair labor practice charge, has jurisdiction as a matter of law to interpret the contract."

Contrary to the contention of the school district, the fact that the grievance procedure in this case allows for advisory arbitration which is not final and binding on the school board does not by implication make a decision of the school board, either accepting or rejecting the arbitrator's recommendation, final and binding on the parties.

We agree with the school district, however, that the PELRB erred in relying on the advisory arbitrator's decision as a basis for its decision. When the parties to a collective bargaining contract have not agreed to be bound by an arbitrator's decision, the PELRB, in the context of an unfair labor practice charge, must conduct a *de novo* evidentiary hearing. *Cf.* SUPER. CT. R. 170(g)(3) (nonbinding arbitration shall be final if no appeal taken within prescribed time), 170-A(j)(2) (in event appeal taken, documents relating to arbitration hearing sealed and not admissible on appeal). Accordingly, the PELRB's order is vacated, and the case remanded for a *de novo* hearing on the association's claim that the school district committed an unfair labor practice by terminating Ms. Hoyt without just cause.

*Reversed and remanded.*

All concurred.