Public Employee Labor Relations Board
No. 93-112

APPEAL OF STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC.
(New Hampshire Public Employee Labor Relations Board)

March 23, 1995

*Michael C. Reynolds,* of Concord, by brief and orally, for the State Employees' Association of New Hampshire, Inc.

*Engel, Gearreald & Gardner, P.A.,* of Exeter (*Mark S. Gearreald* on the brief and orally); for the Town of Exeter.

BATCHELDER, J. The State Employees' Association of New Hampshire, Inc. (the union) appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) dismissing its unfair labor practice complaint against the Town of Exeter (the town). The union argues that the PELRB erred: (1) in ruling that it lacked jurisdiction to find an unfair labor practice; and (2) in failing to find the grievance procedure in the collective bargaining agreement (CBA) "unworkable." We reverse and remand.

On June 27, 1991, Robert Stilson, an employee of the town's municipal services department, was terminated by letter from the chairman of the Exeter Board of Selectmen (the selectmen). The letter alleged that Stilson had taken numerous extended breaks, slept in a town truck during work hours, and lied about doing so. The union appealed the discharge on Stilson's behalf and, pursuant to the grievance procedure in the CBA, requested advisory arbitration.

The arbitrator reported "serious questions about the fairness and objectivity of the investigation." Finding insufficient evidence to support the allegations of extended breaks or lying, the arbitrator determined that "[d]ischarge is too severe a punishment for Mr. Stilson's proven offense of sleeping in a Town truck for a few minutes before quitting." Consequently, the arbitrator recommended a thirty-day suspension.

The selectmen, however, rejected the arbitrator's report. Relying on allegations that the arbitrator determined were not supported by the

evidence, the selectmen voted to uphold Stilson's dismissal. According to the terms of the CBA, the selectmen's decision is "final."

The union subsequently filed an unfair labor practice complaint with the PELRB, arguing that Stilson had been discharged without "just cause" contrary to the CBA and in violation of RSA 273-A:5, I(a), (g), and (h) (1987), and that the selectmen's rejection of the arbitrator's decision rendered the grievance procedure in the CBA "unworkable" contrary to RSA 273-A:4 (1987). Although after two days of hearings the PELRB unanimously agreed with the arbitrator's conclusions and expressed concerns for Stilson's due process rights, a majority of the PELRB determined that "the enforcement of those rights in a case such as this belongs in a forum other than the PELRB." Consequently, the PELRB dismissed the unfair labor practice charge. The union appealed.

As recently clarified in *Appeal of the State of New Hampshire,* 138 N.H. 716, 719, 647 A.2d 1302, 1305 (1994), our review standard is governed by RSA 541:13 (1974), which states:

> [T]he burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

The union argues that the town's conduct in terminating Stilson violated the CBA and, therefore, was an unfair labor practice properly reviewable by the PELRB. The town counters that the decision of the selectmen to uphold Stilson's discharge was "final" and was not subject to review by the PELRB.

In *Appeal of Hooksett School District,* 126 N.H. 202, 204, 489 A.2d 146, 148 (1985), we rejected the school district's argument that because the CBA in that case contained only a four-step grievance procedure, the PELRB had no authority to review the union's unfair labor practice complaint. Instead, we held:

> Absent a provision for binding arbitration following the grievance procedure, and with no explicit or implicit language in the contract stating that step four of the grievance procedure is final and binding on the parties, the PELRB, in the context of an unfair labor practice charge, has jurisdiction as a matter of law to interpret the contract . . . .

*Id.* Similarly, in *Appeal of Campton School District,* 138 N.H. 267, 639 A.2d 241 (1994), we rejected the public employer's argument that the PELRB lacked jurisdiction to hear an unfair labor complaint involving an employee's dismissal. *Id.* at 270, 639 A.2d at 243. We determined that "the fact that the grievance procedure in [that] case allow[ed] for advisory arbitration which [was] not final and binding on the [public employer] [did] not by implication make a decision of the [public employer], either accepting or rejecting the arbitrator's recommendation, final and binding on the parties." *Id.*

■ These two cases control our analysis here. In this case, as in *Appeal of Hooksett School District* and *Appeal of Campton School District,* the grievance procedure employs arbitration that is advisory only. Although the CBA characterizes the selectmen's decision as "final," it does not state that it is "binding" and, as such, that it precludes all review by the PELRB. Indeed, the town conceded at oral argument that the PELRB could have jurisdiction "in this situation," although it characterized that jurisdiction as "limited."

In *Appeal of Campton School District,* we reviewed the grievance procedure then before us and commented that "[a]t any step of the procedure, a decision may become *final.*" *Id.* at 269, 639 A.2d at 242 (emphasis added). Rather than curtail the PELRB's "broad powers to assist in resolving disputes between government and its employees," Laws 1975, 490:1, the "final" step in the grievance procedure merely defines the last avenue to resolution of the grievance within the four corners of the CBA. As in *Appeal of Campton School District* and *Appeal of Hooksett School District,* review by the PELRB then follows implicitly. To hold that the public employer can unilaterally make binding a decision which the CBA does not would deprive the public employee of rights negotiated under the CBA.

■ The union also maintains that the PELRB erred as a matter of law or was clearly unreasonable in not finding the grievance procedure "unworkable." Specifically, it contends. that "a grievance procedure that allows the initially-disciplining body to be the 'final' judge of it's [*sic*] own actions is an unworkable grievance procedure." We disagree.

Under our holding in *Appeal of Campton School District,* the final determination under the grievance procedure need not rest with a decision-maker other than the public employer to make the grievance procedure workable. *Id.* at 270, 639 A.2d at 242–43. Where the final determination under the grievance procedure does rest with the public employer, absent explicit language in the CBA specifically negotiated and agreed upon by the parties waiving their right to appeal to the PELRB, the PELRB is not robbed of its jurisdiction to hear unfair labor practice disputes. *See* RSA 273-A:6, I (Supp. 1994).

The PELRB has jurisdiction to determine whether the town had committed an unfair labor practice. In this case, the PELRB's jurisdiction includes both the substantive claim of discharge without just cause and the procedural claim of abuse of the grievance procedure. Both, if found by the PELRB, would be breaches of the CBA and, as such, unfair labor practices. Accordingly, the PELRB erred as a matter of law in ruling that it lacked jurisdiction to resolve the union's unfair labor practice complaint. *See* RSA 541:13.

*Reversed and remanded.*

All concurred.