Public Employee Labor Relations Board
No. 99-644

# APPEAL OF THE STATE OF NEW HAMPSHIRE

## (New Hampshire Public Employee Labor Relations Board)

October 29, 2001

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State.

*Michael C. Reynolds*, of Concord, by brief and orally, for the State Employees' Association of New Hampshire, Inc., S.E.I.U., Local 1984.

NADEAU, J. The State appeals the decision of the public employee labor relations board (PELRB) finding that the State's adoption of administrative rule changes constituted an unfair labor practice in violation of RSA 273-A:5 (1999). We vacate and remand.

The record supports the following facts. The State Employees' Association of New Hampshire, Inc., S.E.I.U., Local 1984 (SEA) is the duly certified bargaining agent for the majority of State employees. The State and the SEA have been parties to collective bargaining agreements (CBAs) for at least the past twenty years. The CBA at issue in this case was effective from July 1, 1997, through June 30, 1999, and contains two articles — 9.6 and 11.1.1 — which provide for the accrual of floating holidays and bonus leave. Although the CBA is silent on whether these benefits accrue during unpaid leave, arbitration decisions in 1992 and 1993 interpreting identical benefit provisions under predecessor CBAs provide that they do. The decisions were the result of grievances brought by two different employees, and the awards in each case were granted solely to the individual employees who brought the grievances.

On April 21, 1998, the State modified, revised and readopted New Hampshire Administrative Rule, Per 1205.02(b), the amended version of which provides: "No annual leave, sick leave, *bonus leave or floating holidays* shall be accumulated during a leave of absence without pay." N.H. ADMIN. RULES, Per 1205.02(b) (effective April 21, 1998) (emphasis added). Prior to the 1998 amendment, Per 1205.02 did not proscribe the accrual of bonus leave or floating holidays during unpaid leave. *See* N.H. ADMIN. RULES, Per 1205.02 (effective April 27, 1992).

On August 14, 1998, the SEA filed an unfair labor practices complaint (ULP) with the PELRB alleging that the State's rule change affected procedures — the accrual of bonus leave and floating holidays during unpaid leave — that were terms and conditions of employment. The SEA further alleged that the adoption of a rule change without negotiating with the SEA was an unfair labor practice in violation of RSA 273-A:5, I(a), (e), (g), (h) and (i).

In a decision dated November 3, 1998, the PELRB dismissed the SEA's complaint on the basis that it failed to specifically identify the offending newly adopted rules and failed to establish that the rules had actually deprived an SEA member of a right under the CBA or RSA chapter 273-A. However, as the parties were entering the bargaining cycle for their next CBA, the PELRB directed them to bargain over the rule change.

The PELRB subsequently granted a rehearing at which it heard the parties' arguments but did not receive additional evidence. In a decision dated July 20, 1999, the PELRB reversed its prior dismissal and found that by amending Per 1205.02, the State had committed the following unfair labor practices: (1) refusing to negotiate in good faith; (2) breaching the CBA; and (3) adopting a rule relative to the terms and conditions of employment that invalidated portions of the CBA. *See* RSA 273-A:5, I(e), (h) and (i). The PELRB found that the arbitrator's decisions of 1992 and 1993 were binding and, thus, became incorporated into the terms of the CBA under the doctrine of the "law of the contract." This finding formed the basis for the PELRB's conclusion that the State had violated RSA 273-A:5, I(e), (h) and (i). After unsuccessfully moving for reconsideration, the State appealed.

When reviewing a decision of the PELRB, "we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of N.H. Troopers Assoc.*, 145 N.H. 288, 289-90 (2000) (quotation and brackets omitted); *see also* RSA 541:13 (1997).

The State first argues that the PELRB erred by ruling that the subject matter of the 1992 and 1993 arbitration decisions had become the "law of the contract." This raises the threshold question of whether the PELRB has jurisdiction to interpret a CBA in order to determine whether arbitral decisions were intended to become the "law of the contract." After oral argument, we ordered the parties to brief this issue. We conclude that the PELRB lacked jurisdiction to interpret whether the terms of the CBA mandated that arbitral awards be considered the "law of the contract."

■■ We have stated that absent a grievance process in a CBA, of which the last step implicitly or expressly mandates final and binding arbitration, "the PELRB, in the context of an unfair labor practice charge, has jurisdiction as a matter of law to interpret the [CBA]." *Appeal of Campton School Dist.*, 138 N.H. 267, 270 (1994). Implicit in this rule is the understanding that the PELRB does not regularly have jurisdiction to interpret the CBA when it provides for final and binding arbitration. Similarly, in the context of cases involving arbitrability, "[a]lthough the

PELRB is not an arbitrator, it is empowered to determine as a threshold matter whether the dispute falls within the scope of the [CBA], even if this requires interpreting the CBA *to the extent necessary to determine whether the dispute presents [an issue of contract interpretation].*" *Appeal of AFSCME Local 3657*, 141 N.H. 291, 295 (1996) (emphasis added). These cases support the general rule that the interpretation of a CBA is within the province of the arbitrator, subject to certain exceptions recognized by our case law. *See, e.g., id.; Bd. of Trustees v. Keene State Coll. Educ. Assoc.*, 126 N.H. 339, 342 (1985) (PELRB may review CBA to ensure arbitral award consistent with terms of CBA). Indeed, "[w]hen the parties include an arbitration clause in their [CBA], they choose to have disputes concerning constructions of the [CBA] resolved by an arbitrator." *W. R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764 (1983).

■ We now turn to whether the PELRB has jurisdiction to interpret a CBA to determine whether arbitral awards decided under a CBA's arbitration provisions should become the "law of the contract." One of the main goals of collective bargaining is avoiding strife among employers and employees by establishing terms and conditions governing the employment relationship. *American Fed'n Local 298 v. City of Manchester*, 116 N.H. 665, 666 (1976). Collective bargaining between an employer and its employees fosters this goal by assuring that each term and condition of a CBA is premised upon a meeting of the minds. It is for the parties to bargain for each provision of a CBA, including whether to add a provision establishing a system of arbitral precedent. Absent bargained for provisions dictating arbitral precedent, the PELRB should not interpret CBAs to determine whether arbitral awards become the "law of the contract." To allow the PELRB to do so would thwart the collective bargaining process by incorporating terms and conditions into a CBA which were not bargained for by the parties.

■ Such a practice could also result in the creation of a CBA provision based upon an arbitral award narrowly tailored to remedy a grievance affecting a single employee. The collective bargaining process is not intended to be the result of the employer negotiating with a single employee. Rather, it is meant to be the result of negotiations between an employer and all employees, collectively. *Nashua Teachers Union v. Nashua School Dist.*, 142 N.H. 683, 687-88 (1998). Therefore, incorporating arbitral awards that remedy grievances solely between an employer and a single employee into the terms of a CBA runs the risk of creating contractual duties without the collective bargaining of *all* employees. Whether such arbitral awards should be considered the "law of

the contract" or given precedential effect falls squarely within a determination of the arbitrator's authority, which itself is "a question of contract interpretation that the parties have delegated to the arbitrator." *W. R. Grace & Co.*, 461 U.S. at 765.

■ Even if a CBA calls for final and binding arbitration, it does not necessarily mandate that each arbitral award be granted precedential effect or be considered the "law of the contract" in future arbitrations. *See Stratford v. Int'l Ass'n of Firefighters*, 728 A.2d 1063, 1072 (Conn. 1999). Such a determination, as we have stated, is a question of contract interpretation reserved for the arbitrator. This view is shared by a majority of federal courts, which we find instructive. *See, e.g., Hotel Ass'n v. Hotel & Restaurant Emp. Union*, 963 F.2d 388, 390 (D.C. Cir. 1992); *Little Six Corp. v. United Mine Workers of America*, 701 F.2d 26, 29 (4th Cir. 1983); *Boston Shipping v. Intern. Longshoremen's Ass'n*, 659 F.2d 1, 2 (1st Cir. 1981); *New Orleans S. S. Ass'n v. General Longshore Wkrs.*, 626 F.2d 455, 468 (5th Cir. 1980), *aff'd sub nom. Jacksonville Bulk Terminals v. Longshoremen*, 457 U.S. 702 (1982). *See generally* Annotation, *Binding Effect of Arbitration*, 121 A.L.R. FED 487 (1994).

■ Unless the arbitral award clearly and unequivocally dictates the scope of its precedential effect, we hold that the PELRB lacks jurisdiction to determine whether, under the terms of a CBA, an arbitral award becomes the "law of the contract." Although the PELRB may find a well-reasoned arbitral award persuasive when evaluating an unfair labor practice claim, it cannot, absent a clear and unequivocal statement of precedential effect in the award itself, incorporate it into the terms and conditions of a CBA under the "law of the contract" doctrine.

Here, the State and the SEA agreed to submit unresolved grievances arising out of the CBA to arbitration. The CBA arbitration provision gives the arbitrator the power to interpret or apply the terms of the CBA and it provides that his or her decisions shall be "final and binding." The CBA provides no guidance on whether arbitral awards become the "law of the contract." The 1992 and 1993 arbitral awards contain no indication as to whether they were intended to become the "law of the contract" and the parties to those awards never submitted this issue to arbitration. Accordingly, whether the terms of the CBA establish arbitration as binding precedent or the "law of the contract" is a matter of contract interpretation for an arbitrator, not the PELRB.

■ The PELRB lacked jurisdiction to interpret whether the terms of the CBA mandated that arbitral awards be considered the "law of the contract." Because the PELRB's ruling that the State violated RSA 273-A:5, I(e), (h), and (i) relied upon its erroneous interpretation of the CBA, we vacate and remand. In light of our ruling, we need not address the State's remaining arguments.

*Vacated and remanded.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.