Public Employee Labor Relations Board
No. 2000-342

### APPEAL OF NASHUA POLICE COMMISSION

(New Hampshire Public Employee Labor Relations Board)

Argued: June 11, 2003
Opinion Issued: July 18, 2003

*James M. McNamee*, of Nashua, by brief and orally, for the petitioner.

*Donchess & Notinger, P.C.*, of Nashua (*James W. Donchess* on the brief and orally), for the respondent.

BRODERICK, J. The petitioner, the Police Commission of the City of Nashua (Commission), appeals a New Hampshire Public Employee Labor Relations Board (PELRB) ruling upholding the unfair labor practice charges of the respondent, the Police Patrolman's Association of the City of Nashua (Association). *See* RSA 273-A:5, I(e), (h), (i) (1999). We affirm.

The record supports the following facts. In September 1999, the City of Nashua Police Department (Department) issued and implemented a new standard operating procedure (SOP) for notifying Nashua police officers of court appearances. The new SOP provided, in pertinent part, as follows:

### I. COURT/ALS APPEARANCE — NOTIFICATIONS & CANCELLATIONS:

C. An enclosed bulletin board is designated near the rear employee's entrance for all court scheduling and ALS Hearings. The time of day members/employees are required to appear for court or an ALS hearing will be noted on the schedule[] or if an appearance has been cancelled. The date and time the information was posted or canceled will be listed on the form.

D. It is the responsibility of all members/employees to check the bulletin board regularly to become aware of court cases and ALS Hearings and to maintain an awareness of any changes to status of cases scheduled.

E. Occasionally, members/employees may be notified via telephone of cases/ALS Hearings or cancellations.

F. *Responsibilities of Members/employees:*

1. If not posted/canceled prior to the members'/employees' last time in the Department, it is the responsibility of all members/employees to check the status of their case or ALS Hearing. Members/employees may telephone between the hours of 0700 to 0900 on the day prior to the scheduled case. Members/employees should place calls in a timely manner to check the status of their cases.

The Association filed a grievance, alleging that the new SOP violated article 26 of the collective bargaining agreement between the city and the Association (CBA). Article 26 states that the Department

will notify an employee of the need to appear in Nashua District Court at least twenty-four (24) hours in advance. The Department shall notify an employee of the cancellation of a Nashua District Court appearance at least twenty-four (24) hours in advance. If the Department does not give twenty-four (24) hours notice of a Nashua District Court appearance or cancellation, the Department shall pay the employee for (1) hour of overtime compensation in addition to any other amounts due.

The Commission denied the grievance, and the Association thereafter filed unfair labor practice charges with the PELRB. The Commission moved to dismiss the charges on the ground that the CBA required the Association to arbitrate the dispute. The PELRB denied the Commission's motion and ruled that the new SOP violated both the Commission's obligation to bargain with the Association and article 26 of the CBA. *See* RSA 273-A:5, I(e), (h), (i).

"When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of State of N.H.*, 147 N.H. 106, 108 (2001) (quotation omitted); *see also* RSA 541:13 (1997).

I

The Commission first argues that because the Association failed to arbitrate the dispute, the PELRB lacked jurisdiction to interpret the CBA in the context of unfair labor practice charges. The Association counters that the CBA did not require it to arbitrate before submitting its grievance to the PELRB through an unfair labor practice charge.

Resolution of this dispute requires that we interpret article 10 of the CBA. We begin by focusing upon the language of the CBA, as it reflects the parties' intent. *Appeal of Town of Bedford*, 142 N.H. 637, 641 (1998). "This intent is determined from the agreement taken as a whole, and by construing its terms according to the common meaning of their words and phrases." *Id.* (quotation omitted). The interpretation of a collective bargaining agreement, including whether a provision or clause is ambiguous, is "ultimately a question of law for this court to decide." *Appeal of City of Manchester*, 144 N.H. 386, 388-89 (1999) (quotation omitted). "A clause is ambiguous when the contracting parties reasonably differ as to its meaning." *Id.* at 389 (quotation omitted).

Article 10 of the CBA sets forth a multi-step process for resolving grievances. For grievances initiated by the Association or an employee, the steps include, in sequence, review by the grievant's bureau commander (step 1), the deputy chief of operations (step 2), the chief (step 3), and the Commission (step 4). Step 5 of the process provides as follows:

> Failing a settlement at STEP 4, the grievant may present the grievance in writing to the [Association] .... If the [Association] feels that the grievance has merit and that submitting it to arbitration is in the best interest of the department, the [Association] may submit the grievance to the American Arbitration Association, Public Employee Labor Relations Board, or the Hillsborough County Superior Court ....

The Commission argues that the phrase "[i]f the [Association] feels that ... submitting [the grievance] to arbitration" modifies the references to the three forums mentioned in step 5 (the American Arbitration Association, the PELRB and the superior court). The Commission contends that because all three forums may appoint arbitrators to resolve grievances, step 5 allows the Association to submit a grievance to the PELRB only for arbitration; it does not permit the Association to appeal the Commission's step 4 determination by filing an unfair labor practice charge.

■ The Commission is mistaken, and, thus, we hold that its interpretation of article 10 is not reasonable. *See id.* By statute, the PELRB may appoint an arbitrator only in the context of contract negotiations, not in the context of a grievance. *See* RSA 273-A:2, V (1999); RSA 273-A:12 (1999). Read as a whole, RSA 273-A:2, V, which requires the PELRB to maintain a list of neutral third parties, and RSA 273-A:12, which governs the circumstances under which the PELRB may appoint a neutral party to resolve a labor dispute, pertain only to contract negotiation disputes, not to grievances. Both statutes refer to parties who have bargained to an impasse, a term which has meaning only in the context of contract negotiations. *See* RSA 273-A:2, V; RSA 273-A:12, I, IV, V. RSA 273-A:12, I, provides, in pertinent part,

> Whenever the parties request the board's assistance or have bargained to impasse, or if the parties have not reached agreement on a contract within 60 days, ... a neutral party chosen by the parties, or failing agreement, appointed by the board, shall undertake to mediate the issues remaining in dispute.

*See also* RSA 273-A:12, IV ("If the impasse is not resolved following the action of the legislative body, negotiations shall be reopened."); RSA 273-A:12, V ("Nothing in this chapter shall be construed to prohibit the parties from providing for such lawful procedures for resolving impasses as the parties may agree upon."). The PELRB's regulations upon which the Commission relies are in accord. *See* N.H. ADMIN. RULES, Pub 305.01-305.03. Accordingly, we hold that step 5 of the CBA expressly authorized the Association to appeal the Commission's step 4 determination by filing an unfair labor practice charge.

## II

The Commission next argues that the PELRB erroneously ruled that the Commission had a duty to negotiate the new SOP. *See* RSA 273-A:5, I(e). The Commission argues that the means of notifying police officers of court attendance dates falls within the managerial policy exception to the obligation to bargain. *See Appeal of State of N.H.*, 138 N.H. 716, 721-23 (1994).

In *Appeal of State of N.H.*, we adopted the following three-part test to determine the applicability of the managerial policy exception:

> First, to be negotiable, the subject matter of the proposed contract provision must not be reserved to the exclusive

managerial authority of the public employer by the constitution, or by statute or statutorily adopted regulation. . . .

Second, the proposal must primarily affect the terms and conditions of employment, rather than matters of broad managerial policy. . . .

Third, if the proposal were incorporated into a negotiated agreement, neither the resulting contract provision nor the applicable grievance process may interfere with public control of governmental functions contrary to the provisions of RSA 273-A:1, XI.

*Id.* at 722. A proposal that fails the first part of the test is a prohibited subject of bargaining. *See Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 774 (1997). A proposal that satisfies the first part of the test, but fails parts two or three, is a permissible topic of negotiations, and a proposal that satisfies all three parts is a mandatory subject of bargaining. *See id.*

The Commission asserts that adopting and implementing a new procedure for notifying officers of court appearances is a prohibited bargaining subject because the Nashua city charter reserves to the Commission the authority to "control the scheduling of sworn police officers." The only mention in the charter of scheduling police officers concerns determining the "time and manner" of relieving officers of their duties, without loss of pay, for two days in each seven. The charter is otherwise silent with respect to scheduling officers. The charter is also silent with respect to notifying police officers for court appearances. Accordingly, we hold that the new SOP satisfies part one of the test and was not a prohibited subject of bargaining.

With respect to the second part of the test, we agree with the Association that notifying officers of court appearances primarily concerns the terms and conditions of employment, not broad managerial policy. Notifying employees promptly of court appearances and cancellations directly affects their wages and hours. For instance, pursuant to article 26 of the CBA, the Department must pay the employee one hour of overtime in addition to any other amounts due if the Department fails to provide at least twenty-four hour notice that a court appearance was canceled. "[O]ur cases have consistently recognized proposals and actions that primarily affect wages or hours as mandatory subjects of bargaining." *Id.* at 775.

Concerning the third part of the test, we are not persuaded by the Commission's unsupported allegation that there is a "significant danger that allowing the [CBA] or the Association to dictate the means of giving notice of court appearances would significantly interfere with the public control of government functions." We conclude, therefore, that negotiating

the new SOP was a mandatory subject of bargaining. Accordingly, the Department committed an unfair labor practice by adopting the new SOP unilaterally. *See Appeal of Hillsboro-Deering School Dist.*, 144 N.H. 27, 33 (1999).

Finally, the Commission argues that the PELRB's decision is erroneous because it incorrectly found that the new SOP violated the parties' past practice of notifying officers about court appearances. Because as the PELRB's decision states, it did not rest in whole or in part upon this finding, we decline to address the Commission's argument.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.