Public Employee Labor Relations Board
No. 2009-456

APPEAL OF NEW HAMPSHIRE DIVISION OF STATE POLICE
(New Hampshire Public Employee Labor Relations Board)

Argued: April 8, 2010
Opinion Issued: July 23, 2010

*Michael A. Delaney*, attorney general (*Lynmarie C. Cusack*, assistant attorney general, on the brief and orally), for the New Hampshire Division of State Police.

*Molan, Milner & Krupski, PLLC*, of Concord (*Glenn R. Milner* on the brief and orally), for the respondent.

DUGGAN, J. In these consolidated cases, the petitioner, the New Hampshire Division of State Police (Division), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) upholding claims by the respondent, the New Hampshire Troopers Association (Association), that the Division committed unfair labor practices in violation of RSA 273-A:5, I(h) (1999). The Division argues that: (1) the PELRB lacked subject matter jurisdiction over the matter; and (2) the PELRB erred by inserting terms in the parties' collective bargaining agreement that the parties did not intend. Because we hold that the PELRB erred in its decision that the Division's actions were inconsistent with the terms of the parties' agreement, we reverse without reaching the second issue.

The following facts appear in the administrative record. The Association, which is the exclusive representative for New Hampshire State Troopers below the rank of sergeant, and the Division were parties to a collective bargaining agreement, effective from July 1, 2007, to June 30, 2009. The agreement governs grievance procedures, overtime, and sick leave. It provides that troopers may use their sick leave for illness, injury, medical appointments and death in the immediate family. A trooper must request the use of sick leave and provide a reason for his or her absence. If the Division suspects that a trooper is using sick leave for absences not authorized by the collective bargaining agreement, the Division may require a "certificate" from a physician or other health care provider.

The agreement also includes provisions regarding "call back" and "standby status" of troopers. A "call back" occurs when an off-duty trooper is "called back" to work after a shift has concluded or prior to the start of a shift without prior notice. In that situation, the trooper must be paid for working a minimum of four hours. When a trooper is on "standby status," however, the Division requires the trooper to be available for "immediate return to duty, under conditions which do not allow the employee reasonable use of the time waiting."

In December 2007, Trooper Brian Doyle received his annual performance review. In the category of attendance/punctuality, Doyle was rated as "Meeting Expectations." However, his supervisor indicated in the comments that Doyle "used 92.0 hours of Sick Leave over the course of 12 work days," and the "majority were one day leaves occurring at the beginning of the weekend or on the weekend." Doyle was also rated as

"Meeting Expectations" in the category of dependability, but his supervisor noted in the comments that he failed to respond to two call backs. His evaluation stated, "Although . . . Doyle's stance on this subject can not be deemed as unacceptable, it should be weighted when making future decisions in promotions and reassignments. As time progresses one would hope that . . . Doyle's dedication would improve to a more acceptable level."

In February 2008, Trooper Christopher St. Cyr received his annual performance evaluation. His supervisor concluded that his attendance and punctuality were "Below Expectations," and wrote that St. Cyr used "a total of 116 hours," including 36 hours of sick-dependent time, which was characterized as "high." St. Cyr also received a "memo of counsel" about his "excessive/unscheduled absences." In the memo, his supervisor noted that his sick leave in 2006 exceeded the norm and that his last unscheduled leave day "took place on a Sunday during a snow storm," which "hinder[ed] the operations of the Troop and the level of service . . . to the motoring public." For all future sick leave, St. Cyr was required to speak with an on duty supervisor or troop commander to request time off and obtain a physician's certificate.

The Association filed two unfair labor practice charges with the PELRB on behalf of Doyle and St. Cyr, which were consolidated by agreement. The Association argued that the Division committed unfair labor practices when it criticized Doyle for being unavailable for immediate call back during his off-duty hours, and when it criticized Doyle and St. Cyr "for using sick time under circumstances consistent with the requirements of" the collective bargaining agreement. The Division denied the allegations and argued that the PELRB lacked jurisdiction because rules promulgated by the New Hampshire Division of Personnel, not the collective bargaining agreement, dictate the requirements for performance evaluations.

The PELRB determined that it had jurisdiction because the Association alleged the Division committed an unfair labor practice by breaching the collective bargaining agreement in violation of RSA 273-A:5, I(h). It then concluded that the Division erroneously included negative comments in the troopers' personnel files because it had not previously invoked the physician's certificate requirement in the agreement. The PELRB found that "Doyle was making a reasonable use of his time and acting in compliance with the provisions of [the collective bargaining agreement] . . . even though such use prevented him from responding to the call backs in these two instances." The PELRB ordered the Division to remove all negative references to the troopers' use of sick leave and Doyle's failure to respond to the two call backs from their personnel files and to cease and desist from

administering the collective bargaining agreement in a manner inconsistent with its decision. The Division moved for a rehearing, which the PELRB denied. This appeal followed.

We first address the Division's argument that the PELRB lacked subject matter jurisdiction. Specifically, the Division argues that while the collective bargaining agreement establishes how and at what rate sick leave is accumulated, and when it may be used, it does not preclude the Division from commenting on sick leave usage in performance evaluations. The Division also argues that the PELRB lacked jurisdiction because the claims arose from performance evaluations, which are required by RSA 21-I:42, XIII (Supp. 2009). Finally, the Division contends that the PELRB lacked jurisdiction because performance evaluations are essential to the management and supervision of troopers. The Association counters that the PELRB had jurisdiction because the performance evaluations and memoranda of counseling involved the Division's administration of contract terms set forth in the collective bargaining agreement.

When reviewing a decision of the PELRB, we defer to its findings of facts, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the decision is unjust or unreasonable. *Appeal of State Employees' Assoc. of N.H.*, 158 N.H. 258, 260 (2009). The PELRB has primary jurisdiction of all unfair labor practices, including the breach of a collective bargaining agreement by a public employer. *See* RSA 273-A:5, I(h), :6, I. In deciding whether an unfair labor practice has been committed, the PELRB must first examine the terms of the collective bargaining agreement to determine whether it has been breached. *See Appeal of City of Manchester*, 153 N.H. 289, 294 (2006).

Although the parties characterize the issue before us as one of subject matter jurisdiction, we believe that, instead, the dispute requires us to determine whether the PELRB correctly interpreted the collective bargaining agreement. Specifically, the issue is whether the PELRB correctly interpreted Articles VII and XI of the collective bargaining agreement.

We begin by examining the language of the collective bargaining agreement, as it reflects the parties' intent. *Appeal of Nashua Police Comm'n*, 149 N.H. 688, 690 (2003). "This intent is determined from the agreement taken as a whole, and by construing its terms according to the common meaning of their words and phrases." *Id.* (quotation omitted). The interpretation of a collective bargaining agreement, including whether a provision or clause is ambiguous, is ultimately a question of law for this court to decide. *Id.* Our review is *de novo*. *City of Manchester*, 153 N.H at 294.

Article XI, Sick Leave, provides:

11.2 An employee may utilize[] his/her sick leave allowance for absences due to illness, injury, or exposure to contagious diseases endangering the health of other employees when requested by the attending physician, medical and dental appointments with prior approval, or death in the employee's immediate family and shall be deducted from his/her allowance on the basis of workdays and not calendar days.

. . . .

11.3 To utilize his/her sick leave, the employee must file a written application with the [Division] specifying the basis for the request. Employees shall be notified as to the approval or denial of their leave requests within a reasonable time. If denied, upon request, the [Division] shall state the reason(s) for any denial.

11.4 An employee may be required by the [Division] to furnish the [Division] with a certificate from the attending physician or other licensed health care practitioner when, for reasonable cause, the [Division] believes that the employee's use of sick leave does not conform to the reasons and requirements for sick leave use set forth in this Agreement.

Article VII, Overtime, provides:

7.3 Employees called back to work without prior notice on the same day after once leaving work or before the next regular starting time, shall be guaranteed a minimum of not less than four (4) hours compensation.

. . . .

7.5 Standby:

Any employee who is required by the [Division] to be available for immediate return to duty, under conditions which do not allow the employee reasonable use of the time waiting to be called back to duty for his or her own purposes, shall be deemed to be in standby status. Time in standby status shall be considered time worked for regular compensation and overtime compensation purposes.

■ By its plain language, the collective bargaining agreement permits employees to accrue sick leave and utilize it up to the maximum rate allowed. It also provides that troopers who are called back to work are entitled to additional compensation for their time. Nothing in the express terms of the collective bargaining agreement, however, precludes the Division from commenting on these topics during troopers' performance evaluations.

Moreover, pursuant to Article II of the collective bargaining agreement, the Division "retains all rights to manage, direct and control its operations," including "[d]irecting and supervising employees"; "[a]ppointing, promoting, transferring, assigning, demoting, suspending, and discharging employees"; and "[m]aintaining the efficiency of governmental operations." These rights are "subject to the provisions of law, personnel regulations and the provisions of this Agreement, to the extent that they are applicable," including RSA 21-I:42, XIII and the rules promulgated by the division of personnel.

RSA 21-I:42, XIII establishes a performance evaluation system for all classified employees, with the following elements:

(a) All full-time classified employees shall be evaluated on a regular basis.

(b) Evaluations shall be in writing and shall be conducted at least annually.

(c) Evaluations shall be conducted by an employee's immediate supervisor.

(d) Evaluations shall be based upon specific written performance expectations or criteria developed for the position in question and employees shall be made aware of these performance expectations in advance of any evaluation.

(e) The evaluation format shall include a narrative summary on the employee's performance.

(f) Employees shall be permitted to participate in the evaluation process, shall be given a copy of their evaluation, and shall have an opportunity to comment, in writing, on their evaluation, and such comments will be included in the employee's permanent record.

(g) Employees shall have a right to nonconcur, in writing, with their evaluation.

(h) Employees shall certify, in writing, that they have reviewed their evaluation.

(i) Evaluation reports shall be reviewed by the supervisor of the official completing the evaluation who shall concur or nonconcur in writing with each evaluation report.

 The division of personnel rules require supervisors, when conducting performance evaluations, to indicate whether each employee meets or falls below expectations in attendance. *See* N.H. ADMIN. RULES, Per 801.03(a)(1), 801.04(a)(1), and 801.05(a)(1). Because the Division's comments on the troopers' attendance and dependability are authorized under the plain language of Article II of the collective bargaining agreement, RSA 21-I:42, XIII and by administrative rule, the PELRB erred in construing the collective bargaining agreement as prohibiting the Division's actions. We therefore reverse the PELRB's ruling that the Division breached the collective bargaining agreement.

*Reversed.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.