Public Employee Labor Relations Board
No. 2011-012

APPEAL OF MICHAEL SILVERSTEIN
(New Hampshire Public Employee Labor Relations Board)

Argued: October 19, 2011
Opinion Issued: January 13, 2012

*Heather G. Silverstein,* of Concord, on the brief and orally, for the plaintiff.

*Upton & Hatfield, LLP,* of Concord (*John F. Teague* and *James A. O'Shaughnessy* on the brief, and *Mr. Teague* orally), for the defendant.

*Theodore E. Comstock* and *Barrett M. Christina,* of Concord, by brief, for New Hampshire School Boards Association, as *amicus curiae.*

*James F. Allmendinger,* of Concord, by brief, for NEA-New Hampshire, as *amicus curiae.*

LYNN, J. The plaintiff, Michael Silverstein, appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) de-

clining to exercise jurisdiction over his unfair labor practice complaint against the defendant, the Andover School Board (School). We affirm.

## I

In May 2010, the plaintiff, a physical education teacher at the Andover Elementary/Middle School, signed an employment contract that reduced him from a full-time (five days per week) employee to a four days per week employee, cut his salary by approximately $7000, and increased his costs for health insurance. Later, pursuant to a three-step grievance process in the collective bargaining agreement (CBA) governing his employment, the plaintiff initiated a grievance against his employer arising out of the reduction. That process affords employees three opportunities to be heard: the first before the school principal; the second before the superintendent; and a "final and binding" hearing before the school board. While the second step of that process was still underway, the plaintiff filed an unfair labor practice complaint against the School with the PELRB, apparently out of concern that the statute of limitations would run on those claims if he failed to file at that time. See RSA 273-A:6, VII (2010) (providing that PELRB shall "summarily dismiss any complaint of an alleged violation of RSA 273-A:5 which occurred more than 6 months prior to the filing of the complaint with the body having original jurisdiction of that complaint"). The PELRB, however, concluded that it lacked jurisdiction "to interpret the Andover CBA and decide the merits of Mr. Silverstein's complaint during the grievance proceedings and after the grievance proceedings are completed." Subsequently, the PELRB denied the plaintiff's motion for a rehearing, and this appeal followed.

On appeal, the plaintiff argues that: (1) the PELRB has jurisdiction, as a matter of law, over unfair labor practice complaints whenever the CBA does not provide for final and binding arbitration; (2) the PELRB's interpretation of the CBA violates the State and Federal Constitutions; and (3) the CBA's grievance procedure is not "workable" as required by RSA 273-A:4 (Supp. 2011) and otherwise violates public policy. We address each argument in turn.

## II

The plaintiff first argues that the PELRB erred in concluding that the terms of the CBA deprived it of jurisdiction over his unfair labor practice complaint against the School. He contends that he is entitled to a *de novo* evidentiary hearing before the PELRB because that body "is only robbed of its jurisdiction over unfair labor practice disputes if the parties to a collective bargaining agreement have explicitly agreed to final and binding arbitration." The School argues that the PELRB correctly declined juris-

diction over the plaintiff's case in light of the three-step grievance procedure in the CBA stating that the school board's decision on the grievance is "final and binding."

■ We begin by examining the language of the CBA, as it reflects the parties' intent. *Appeal of N.H. Div. of State Police*, 160 N.H. 588, 591 (2010). This intent is determined from the agreement taken as a whole, and by construing its terms according to the common meaning of their words and phrases. *Id.* We interpret a CBA *de novo*, *id.*, and we will set aside the decision of the PELRB if it was based upon an erroneous interpretation of law. *See Appeal of State Employees' Assoc. of N.H.*, 156 N.H. 507, 508 (2007).

The CBA's three-step grievance process, in relevant part, provides as follows:

> Step One: In the event a mutually acceptable resolution of the problem is not reached . . . , a grievance may be submitted to the Principal for formal consideration. . . .

> Step Two: If the grievant is dissatisfied with the decision rendered by the Principal a written request for a hearing may be submitted to the Superintendent. . . . The Superintendent shall schedule a hearing . . . and shall render a decision in writing within 10 school days of the hearing. . . .

> Step Three: If the grievant is dissatisfied with the decision of the Superintendent, the grievant may request a hearing before the School Board. . . . [A] hearing shall be scheduled before the full Board . . . and a decision of the full Board will be made within 10 school days of the hearing. The Board's decision will be final and binding.

This language was specifically negotiated and agreed upon by the parties, and, therefore, it is binding upon both the public employee and the public employer. *See Appeal of Berlin Board of Education*, 120 N.H. 226, 230 (1980). Absent some indication that the legislature intended the PELRB to have the power to conduct a *de novo* evidentiary hearing regardless of whether the CBA contains a final and binding grievance process, we will honor the plain language of the parties' agreement.

■ The Public Employee Labor Relations Act was enacted in 1975 to "foster harmonious and cooperative relations between public employers and their employees . . . ." Laws 1975, 490:1. "To achieve this goal, the Act granted public employees the right to organize and engage in collective

bargaining with their employers, mandated that public employers negotiate in good faith with employee organizations, and established the PELRB to assist in resolving disputes between government and its employees." *Appeal of House Legislative Facilities Subcom.*, 141 N.H. 443, 446 (1996). RSA chapter 273-A:6 (2010) bestows on the PELRB "primary jurisdiction" over all unfair labor practices of public employers. Breaching a collective bargaining agreement is one of the enumerated unfair labor practices contained in RSA 273-A:5, I(h) (2010).

◼ The plaintiff argues that the PELRB has the power to review the merits of his unfair labor practice dispute, as a matter of law, "absent final and binding arbitration with a neutral third-party, whereby public employees have 'explicitly' waived their statutory rights to the PELRB's review." We have never held, however, that a provision for final and binding arbitration is a necessary precondition to a union bargaining away its members' right to *de novo* PELRB review; such a holding would unduly restrict the bargaining power of both unions and public employers to negotiate terms of the employment contract. In fact, in identifying the proper limits of the PELRB's authority, our precedents have been careful to respect the bargaining process between public employers and employees. For example, in *Appeal of City of Manchester*, 153 N.H. 289, 293 (2006), we noted that the PELRB is empowered to interpret a CBA, as a threshold matter, to determine whether a specific dispute falls within the scope of the CBA *"[a]bsent specific language to the contrary in the CBA."* (Emphasis added.) Similarly, in *Appeal of Berlin Board of Education*, 120 N.H. at 230, we emphasized that grievance language specifically negotiated and agreed upon is binding on both public employees and the public employer. Even in our cases upholding the PELRB's power to interpret the terms of a CBA or conduct a hearing on the merits of an unfair labor practice dispute, we have emphasized that the parties to a CBA are free to establish their own means of resolving disputes through negotiated contractual terms. In *Appeal of Hooksett School District*, 126 N.H. 202 (1985), we rejected a school board's argument that, because the CBA contained a four-step grievance procedure, the PELRB lacked authority to review the union's unfair labor practice complaint. Noting that the CBA in that case did not provide for "final or binding arbitration *or other final disposition that is binding on the parties,*" *id.* at 204 (emphasis added), we held:

> Absent a provision for binding arbitration following the grievance procedure, *and with no explicit or implicit language in the contract stating that step four of the grievance procedure is final*

*and binding on the parties*, the PELRB, in the context of an unfair labor practice charge, has jurisdiction as a matter of law to interpret the contract . . . .

*Id.* (emphasis added). Similarly, in *Appeal of Campton School District*, 138 N.H. 267, 270 (1994), we determined that the fact that a CBA's grievance procedure allowed for advisory arbitration did not by implication make the public employer's rejection of the arbitrator's decision final and binding on the parties. Reiterating the holding in *Appeal of Hooksett*, we explained that "with no explicit or implicit language in the contract stating that the last step of the grievance procedure is final and binding on the parties," the PELRB had jurisdiction to hear the employee's unfair labor practice complaint. *Appeal of Campton School Dist.*, 138 N.H. at 270 (quotation and brackets omitted). And, in *Appeal of State Employees' Association*, 139 N.H. 441, 444 (1995), where the grievance procedure allowed for advisory arbitration and provided that the public employer's decision was "final" but not "binding," we concluded that PELRB review followed implicitly.

■ The above decisions reflect the structural role of the PELRB in adjudicating labor disputes between parties who otherwise are free to negotiate the details of their employment relationship. "A CBA is a contract between a public employer and a union over the terms and conditions of employment." *Appeal of City of Manchester*, 153 N.H. at 293 (quotation omitted). "When parties enter into a CBA, they are obligated to adhere to its terms, which are the product of their collective bargaining." *Id.* The collective bargaining process itself "is meant to be the result of negotiations between an employer and all employees, collectively." *Appeal of State of N.H.*, 147 N.H. 106, 109 (2001). The purpose of creating the PELRB was not to upset the legitimate expectations of contracting parties as expressed in the terms of their agreements, but to "foster harmonious and cooperative relations between public employers and their employees," and to "*assist* in resolving disputes between government and its employees." *Appeal of City of Manchester*, 153 N.H. at 295-96; *see also* Laws 1975, 490:1, III.

■ Admittedly, one of our cases arguably suggests that a CBA provision for final and binding arbitration is necessary to remove the PELRB's authority to adjudicate a labor dispute *de novo*. In *Appeal of State of New Hampshire*, 147 N.H. at 108, we quoted *Appeal of Campton School District* for the proposition that: "[A]bsent a grievance process in a CBA, of which the last step implicitly or expressly mandates final and binding arbitration, the PELRB, in the context of an unfair labor practice charge, has jurisdiction as a matter of law to interpret the CBA." (Quotation and brackets omitted.) However, as noted above, the full quotation in *Appeal of*

*Campton School District*, which itself quoted *Appeal of Hooksett School District*, makes it clear that, in addition to binding arbitration, another exception to the jurisdiction of the PELRB to interpret the CBA in the context of an unfair labor practice complaint is where, as here, there is " 'explicit or implicit language in the contract stating that the last step of the grievance procedure is final and binding on the parties.' " *Appeal of Campton School Dist.*, 138 N.H. at 270 (brackets omitted). Although we did not recite fully the relevant language from the *Campton* and *Hooksett* cases, nothing in *Appeal of State of New Hampshire* suggests that we intended to depart from the reasoning of those cases, and we now explicitly reiterate that the PELRB has no authority to interpret a CBA or review the merits of a grievance when the CBA to which the parties are subject includes a final and binding grievance process internal to the employer. Thus, we reject the plaintiff's argument that the doctrine of *stare decisis* compels the conclusion that, in the absence of a CBA provision for binding arbitration, the PELRB has authority to review the merits of his grievance. When the parties include a final and binding grievance procedure in their labor contract, as they have here, they choose to have disputes resolved through that process, and each party must hold up its end of the bargain. *Cf. W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764 (1983); *Pitt v. Dept. of Corrections*, 954 A.2d 978, 983 (D.C. 2008) ("Where the government employees are covered by a collective bargaining agreement that includes exclusive grievance procedures, those procedures may supersede otherwise available statutory provisions for . . . review.").[1]

## III

■■ Next, the plaintiff argues that the PELRB's interpretation of the CBA violates his due process rights under the State and Federal Constitutions because he has been deprived of a neutral government tribunal. We cannot agree, however, that the only constitutionally acceptable procedure for adjudicating his unfair labor practice complaint is a *de novo* hearing before the PELRB. The plaintiff's due process argument overlooks the fact that the CBA is a binding agreement subjecting *both* parties to its

---

[1] Because the plaintiff's unfair labor practice complaint involved only the claims that (1) the School violated the CBA by reducing the plaintiff's hours, salary and benefits and (2) the CBA's grievance procedures were unworkable, we have no occasion to address the School's assertion that, at the conclusion of the grievance process established by the CBA, the PELRB would have jurisdiction to review the plaintiff's allegations that the School did not conduct the grievance process fairly. Because the fairness of the hearing actually conducted by the School and the outcome thereof are not at issue in this appeal, in reaching our decision we have not relied on any information beyond the record of the proceedings before the PELRB. For this reason, the plaintiff's motion to strike certain statements in and attachments to the School's brief and his motion to supplement the record are both denied as moot.

provisions. To the extent that the ordinary procedural requirements of a *judicial*-type hearing between adversarial parties were lacking, the CBA's three-step grievance procedure operates as a waiver of those typical guarantees. Although a union may not waive its members' statutory rights in certain contexts, *see, e.g., NLRB v. Magnavox Co.*, 415 U.S. 322, 324 (1974) (union may not waive members' rights to distribute union literature or solicit union membership during nonworking time, where employer's ban on such activities "might seriously dilute [the statutory right to form, join, or assist labor organizations]"), a union may waive its members' customary procedural rights, such as *de novo* judicial review, by way of the ordinary bargaining process. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705, 708 (1983) (noting that Supreme Court "long has recognized that a union may waive a member's statutorily protected rights" as long as waiver is clear and unmistakable).

Furthermore, even putting aside the waiver issue, the plaintiff has not cited any authority, nor are we aware of any, holding that a public school teacher has a constitutionally-based due process right to a termination hearing before a third party, such as an arbitrator or the PELRB, rather than before the school board. *See Batagiannis v. West Lafayette Community School*, 454 F.3d 738, 741-42 (7th Cir. 2006) (rejecting school superintendent's due process challenge to termination hearing held by school board which had previously suspended her because it lost confidence in her leadership, and explaining that "the requirement of an opportunity for a hearing must be implemented in a way that allows the politically responsible office-holders to achieve their aims"); *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 779-80 (9th Cir. 1982) (Kennedy, Circuit Judge) (due process not violated by school board conducting post-termination hearing even though board had previously made the decision to terminate teacher); *see also Hortonville Joint School Dist. No. 1 v. Hortonville Ed. Assn.*, 426 U.S. 482, 496-97 (1976) (no due process violation in school board making decision to fire striking teachers even though board participated in failed collective bargaining that led to strike); *Appeal of Hopkinton Sch. Dist.*, 151 N.H. 478, 480-81 (2004) (mere fact that school board played some role in decision to non-renew teacher did not preclude board from affording teacher a hearing that fully comports with due process).

## IV

■■ Next, the plaintiff argues that the PELRB's decision violates his right to a remedy at law under Part I, Article 14 of the State Constitution, which states:

Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obligated to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

This article "is basically an equal protection clause in that it implies that all litigants similarly situated may appeal to the courts both for relief and for defense under like conditions and with like protection and without discrimination." *State v. Basinow*, 117 N.H. 176, 177 (1977) (quotation omitted). Its purpose is to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements on access to the courts. *Opinion of the Justices, Limitation on Civil Actions*, 137 N.H. 260, 265 (1993). The plaintiff has cited no authority, however, and we have found none, to support his desired outcome in this case — a *de novo* hearing before the PELRB to resolve his unfair labor practice complaint despite the existence of a final and binding three-step grievance process internal to the public employer. Freely negotiated labor contracts binding on public employees and employers alike are not the kinds of "imaginary barriers of form" contemplated by those cases allowing plaintiffs to have their day in court despite a lack of strict compliance with technical rules. *See Roberts v. General Motors Corp.*, 140 N.H. 723, 729 (1996) (allowing lawsuit to proceed despite "formal error of plaintiff's counsel").

V

Finally, the plaintiff contends that the CBA's grievance procedure is not "workable" pursuant to RSA 273-A:4, and violates public policy. We disagree.

RSA 273-A:4 provides that "[e]very agreement negotiated under the terms of this chapter shall be reduced to writing and shall contain workable grievance procedures." The plaintiff argues that "permitting one party to an agreement . . . to be the only 'judge' as to whether it breached a collective bargaining agreement" violates the policy behind RSA chapter 273-A, and, thus, is unworkable. We have previously held, however, that "the final determination under the grievance procedure need not rest with a decision-maker other than the public employer to make the grievance procedure workable." *Appeal of State Employees' Assoc.*, 139 N.H. at 444; *see Appeal of Campton School Dist.*, 138 N.H. at 270. As those decisions are not in doubt, we cannot conclude that the CBA's grievance procedure is not workable under RSA 273-A:4.

The plaintiff argues further that the CBA's grievance procedure runs contrary to public policy because it "permit[s] a public employer to

have unlimited power with regard to the terms of a collective bargaining agreement." However, giving effect to the terms of the grievance procedure advances an independent set of policy interests underpinning the Public Employee Labor Relations Act: respect for the bargaining process between labor unions and public employers, "harmonious and cooperative relations between public employers and their employees," and the "uninterrupted operation of government." Laws 1975, 490:1. The parties' bargaining process produced an employment contract; presumably, union members received some benefit in exchange for agreeing to the procedure giving the School Board final and binding authority to adjudicate disputes. Even were we to agree that the grievance procedure vests in the school board disproportionate power over employees, we will not invalidate a contract, from all appearances freely and fairly negotiated, that contains express terms governing the adjudication of employee complaints. "Parties generally are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably." *Mills v. Nashua Fed. Sav's and Loan Assoc.*, 121 N.H. 722, 726 (1981).

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.