Public Employee Labor Relations Board
No. 2009-496

APPEAL OF NEW HAMPSHIRE DIVISION OF STATE POLICE
(New Hampshire Public Employee Labor Relations Board)

Argued: March 24, 2010
Opinion Issued: August 19, 2010

*Michael A. Delaney*, attorney general (*Nancy J. Smith*, senior assistant attorney general, on the brief and orally), for the petitioner.

*Molan, Milner & Krupski, PLLC*, of Concord (*John S. Krupski* on the brief and orally), for the respondent.

CONBOY, J. The petitioner, New Hampshire Division of State Police (division), appeals an order of the New Hampshire Public Employee Labor Relations Board (PELRB) finding that the division committed an unfair labor practice by unilaterally reassigning state troopers to patrol areas in which they reside. We reverse.

The following facts were found by the PELRB or are not otherwise disputed. The State, through its department of safety, is the public employer of the state police. *See* RSA 273-A:1, X (2010). The respondent, New Hampshire Troopers Association (association), is the duly certified bargaining agent for sworn personnel employed by the division up to and including the rank of sergeant. The remaining respondents are six state troopers who were reassigned. During the relevant time period, the parties were bound by a collective bargaining agreement. Association members are assigned by the division to road patrol within six troop areas, Troops A through F, throughout the state. Section 21.7 of the collective bargaining agreement provides: "Any employee may live within a town within a patrol area to which she/he is assigned or within a reasonable distance from his/her assigned patrol area." The term "reasonable distance" is not defined in the collective bargaining agreement.

In 2007, a trooper requested permission from the division colonel to change her residence to one outside her patrol and troop areas. The colonel initially denied the request, but later reversed his decision and permitted the trooper to live outside her assigned area. Around the time of this request, the colonel undertook a survey analyzing trooper residency and discovered that fourteen of twenty-eight troopers assigned to Troop A were not living within their assigned areas. Subsequently, all troop areas were surveyed. The results indicated that other troopers were also not living within the areas to which they were assigned. Troopers use division cruisers in commuting from their homes to their assignments.

In January 2008, due to a concern about rising fuel costs, the division revised its Professional Standards of Conduct to define the "reasonable distance" that a trooper could live outside his or her patrol area as a distance that would "not exceed a cost to the division over one hundred ($100) dollars per year" for commuting to the assigned patrol area. In February 2008, the division advised troopers living outside their assigned patrol areas that they would be reassigned to patrol areas that included towns in which they resided. These reassignments necessitated troop transfers. No troopers were required to move and there were no changes in rank, duties, job responsibilities, or income. However, some of the transferred troopers' shifts were changed as a result of the seniority-based shift bidding procedure within each troop.

The respondents filed a complaint with the PELRB charging the division with an unfair labor practice because it unilaterally and without negotiation defined residential "reasonable distance" and reassigned troopers to patrol areas in which they reside. After a two-day hearing, the PELRB determined that the division's unilateral actions violated RSA 273-A:5, I(e) (failing to negotiate in good faith), RSA 273-A:5, I(h) (breaching a collective bargaining agreement), and RSA 273-A:5, I(i) (making any law or regulation that invalidates any portion of an agreement). It concluded that the division breached the collective bargaining agreement by unilaterally defining the term "reasonable distance" and, as a consequence, the troopers were reassigned based upon an illegal directive. Accordingly, the PELRB ordered the division to void the February 2008 reassignment directive. The division unsuccessfully moved for rehearing and reconsideration of the PELRB's decision regarding trooper reassignment, and that issue is now before us. The division has not challenged the PELRB's finding that the definition of residential "reasonable distance" based on fuel expense is a mandatory subject of negotiation.

"When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of State Employees' Assoc. of N.H.*, 158 N.H. 258, 260 (2009). On appeal, the division first contends that the PELRB erroneously assumed that the reassignments would not have occurred but for the division's decision to define residential "reasonable distance." It argues that its reassignment directive, based upon an assessment of fuel savings, was independent of its decision to define "reasonable distance." We agree. Although the PELRB found that the reassignment decision was made "[a]t approximately the same time" as the decision to define "reasonable distance," nothing in the record indicates that the reassignments were based upon the newly articulated definition of "reasonable distance." Rather, as the PELRB found, the division's decision to reassign troopers was based "upon the results of [the] survey, ideas of efficiencies to be achieved in the division of labor through reassignments and savings in gas usage." We conclude that the division implemented two distinct measures to achieve its purpose in reducing fuel costs: (1) revising the Professional Standards of Conduct to define the term "reasonable distance"; and (2) reassigning troopers to patrol areas in which they reside.

The division next argues that the unilateral reassignment of troopers is a management prerogative as defined in RSA 273-A:1, XI and section 2.1.2 of the collective bargaining agreement, and therefore no negotiation was required. The PELRB concluded that "while the [division] may have retained the right to transfer and assign personnel, it is also bound by its

agreement to permit troopers to live 'within a reasonable distance' of their assignment area." This dispute requires us to determine whether the PELRB correctly interpreted Articles II and XXI of the collective bargaining agreement.

We begin by examining the language of the collective bargaining agreement, as it reflects the parties' intent. *Appeal of Nashua Police Comm'n*, 149 N.H. 688, 690 (2003). "This intent is determined from the agreement taken as a whole, and by construing its terms according to the common meaning of their words and phrases." *Id.* (quotation omitted). The interpretation of a collective bargaining agreement is a question of law, which we review *de novo*. *Appeal of City of Manchester*, 153 N.H. 289, 294 (2006).

Pursuant to Article II of the collective bargaining agreement, the division "retains all rights to manage, direct and control its operations," including "[d]irecting and supervising employees"; "[a]ppointing, promoting, transferring, assigning, demoting, suspending, and discharging employees"; and "[m]aintaining the efficiency of governmental operations." These rights are "subject to the provisions of law, personnel regulations and the provisions of this Agreement, to the extent that they are applicable." Section 21.7 of the agreement provides: "Any employee may live within a town within a patrol area to which she/he is assigned or within a reasonable distance from his/her assigned patrol area."

By its plain language, the collective bargaining agreement expressly reserves to management the discretion to transfer and assign troopers. This express reservation of discretion is not limited by the "reasonable distance" language in section 21.7. Here, no troopers were required to change residence and the respondents do not dispute that the troopers, following reassignment, continue to live within "a reasonable distance from [their] assigned patrol area[s]." Accordingly, we hold that the PELRB erred in finding that the unilateral reassignment of troopers was an unfair labor practice.

*Reversed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.